1864

AMA MANAGEMENT CORP., Appellant v. Alvin STRASBURGER, Individually and as general partner for Associated Distributing Co., a South Carolina Limited Partnership, Roy Strasburger, Individually and as general partner for Associated Distributing Co., a South Carolina Limited Partnership, Associated Distributing Co., a South Carolina Limited Partnership, and TransAmerica Commercial Finance Corporation, Respondents.

(420 S.E. (2d) 868)

Court of Appeals

*Robert W. Foster* and *Howard A. VanDine, III,* both of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for appellant.*

*Evans T. Barnette* and *Thomas E. McCutchen,* both of *Whaley, McCutchen, Blanton & Rhodes; James M. Brails-*

*ford, III*, and *John S. Taylor*, both of *Robinson, McFadden & Moore*, Columbia, *for respondents.*

Heard Feb. 17, 1992; Decided Aug. 10, 1992.

Reh. Den. Sept. 16, 1992.

BELL, Judge:

This is an action in contract to enforce two agreements guaranteeing payment of a loan made by TransAmerica Commercial Finance Corporation, a commercial lender, to Top Brass Enterprises, Inc., a bankrupt corporation. AMA Management Corp., the holder of the guaranty agreements by virtue of an assignment for value from TransAmerica, sued Alvin Strasburger and Associated Distributing Co., the respective guarantors. Roy and Alvin Strasburger were also sued individually and as partners of Associated. In addition, AMA sued TransAmerica on a separate claim for misrepresentation in connection with the assignment and for breach of the assignment agreement. The case was brought on for trial by jury. At the close of AMA's evidence, the court granted motions by the Strasburgers and Associated for a directed verdict, holding that the assignment to AMA operated to extinguish the debt and release the guarantors. In response to TransAmerica's motion for a directed verdict, the court dismissed the cause of action for misrepresentation on the ground that the claim was moot because the debt and guaranty agreements were extinguished. The court also granted a directed verdict on AMA's claim for breach of the assignment agreement, although no motion was before it regarding that claim. AMA appeals. We affirm on other grounds as to the cause of action for misrepresentation, but reverse and remand as to the causes of action on the guaranty agreements and for breach of the assignment agreement.

The facts relevant to the appeal are largely undisputed. Associated is a wholesale distributor of household appliances owned and operated by Alvin and Roy Strasburger as partners. Among its customers was Top Brass, a nationwide retail dealer of household appliances.

Top Brass encountered difficulty financing its purchases from Associated. To resolve this difficulty, the parties entered negotiations with Borg-Warner Acceptance Corporation, the

predecessor in interest of TransAmerica, to arrange floor plan financing for Top Brass.[1] Under a proposed floor plan agreement, Associated would ship goods to Top Brass and send the bills to TransAmerica. TransAmerica would advance money directly to Associated to pay the bills, then look to Top Brass for repayment of the advances. In return for this extension of credit, Top Brass would give TransAmerica a first lien security interest in all of its inventory, receivables, and other specified collateral to secure repayment of the sums advanced.

A problem arose with this proposed financing plan, because Security Pacific Bank had a prior perfected security interest in the inventory of Top Brass. To induce TransAmerica to provide floor plan financing, TransAmerica, Security Pacific, and Top Brass agreed to execute an Inventory Security Agreement in which Security Pacific subordinated its security interest to TransAmerica. In reliance upon the anticipated execution of the Inventory Security Agreement by Security Pacific, Associated sold about $500,000 worth of goods to Top Brass.

As part of this negotiated arrangement, Alvin Strasburger and Associated also executed the written guaranty agreements at issue in this suit. There is a dispute concerning the validity and terms of the guaranty agreements which is not relevant to the issues raised by this appeal.[2] For purposes of analysis, therefore, we assume, without deciding, that the guaranty agreements are valid.

On August 25, 1986, Top Brass filed for protection from its creditors under Chapter 11 of the United States Bankruptcy Code. On that date, it had an unpaid debt to TransAmerica of $472,368. TransAmerica timely filed a Proof of Claim for that amount as a secured creditor under the Inventory Security Agreement.

The bankruptcy court eventually appointed a trustee to take possession of the bankrupt estate and to operate Top Brass's business. The trustee, with the approval of the bankruptcy

---

[1] For convenience, Borg-Warner and TransAmerica will be treated as one entity in this opinion. We shall hereafter refer to both as "TransAmerica."

[2] The Strasburgers and Associated contend the guaranty agreements were limited and conditional and were in effect only until TransAmerica received the executed Inventory Security Agreement from Security Pacific on August 21, 1986. TransAmerica and AMA contend the guaranty agreements are absolute, continuing guarantees of payment.

court, entered into a management agreement with AMA. Under the management agreement, AMA was to manage Top Brass's day-to-day operations, lend new money to the business, and otherwise conduct the affairs of the business subject to the approval and direction of the trustee and the bankruptcy court. In return, the bankrupt estate was to pay AMA a $40,000 management fee each month and to repay any sums AMA advanced to rehabilitate the business. Repayment to AMA was secured by a so-called "super priority" lien on all assets of the bankrupt estate. This lien had priority over all prepetition debt. In addition, if the bankruptcy court approved the reorganization plan submitted by AMA and the Chapter 11 reorganization was successful, AMA would emerge as a majority shareholder in the reorganized business.

During the course of the Chapter 11 reorganization, AMA loaned approximately $3.8 million to the bankrupt estate in an attempt to return the business to profitable operation. After many months of conducting the business, AMA decided a greater infusion of money was needed to make the reorganization succeed. Because it wanted to decrease rather than increase its own exposure as a lender, AMA decided to look for an outside lender to supply the additional money. To that end, it entered negotiations with TransAmerica to extend a $3 million line of credit to the business. Roy Strasburger was instrumental in arranging these negotiations and also participated directly in some of the negotiating sessions.

AMA and TransAmerica eventually concluded a set of interrelated agreements to provide Top Brass with additional credit. TransAmerica, on its part, agreed to furnish the bankrupt estate with a $3 million line of credit under which it would immediately advance $1.25 million in cash to allow Top Brass to pay down half of its then-outstanding $2.5 million debt to AMA. The remaining $1.75 million on the line of credit would be used to infuse working capital into the business as needed. AMA, on its part, agreed that TransAmerica would be secured as to the $3 million by a lien on the bankrupt estate's assets senior to AMA's super priority lien. AMA also paid TransAmerica $325,000 in cash for a written assignment of TransAmerica's $472,368 Proof of Claim in the bankruptcy court together with the Inventory Security Agreement and the two guaranty agreements securing that claim. AMA's pur-

chase of the Proof of Claim was part of the inducement for TransAmerica to extend postpetition credit to the bankrupt estate. The bankruptcy court approved these agreements.

As it happened, AMA was unable to rehabilitate the business, the bankruptcy court never approved a reorganization plan, and the Chapter 11 reorganization failed. AMA then filed this suit seeking to enforce the assigned guaranty agreements.

## I.

AMA contends the circuit court erred in holding TransAmerica's assignment of its bankruptcy claim to AMA released the guarantors from their obligations under the guaranty agreements.

A guaranty of payment is an absolute or unconditional promise to pay a particular debt if it is not paid by the debtor at maturity. *Greene County v. National Bank of Snow Hill,* 193 N.C. 524, 137 S.E. 593 (1927). It is a personal obligation running directly from the guarantor to the creditor which is immediately enforceable against the guarantor upon default of the debtor. *See, Peoples Federal Savings and Loan Assoc. v. Myrtle Beach Retirement Group, Inc.,* 300 S.C. 277, 387 S.E. (2d) 672 (1989). If the principal obligation is assignable, assignment of the debt operates as an assignment of the guaranty of the debt. *Bachmann v. Glazer,* 316 Md. 405, 559 A. (2d) 365 (1989); *Silver V. Friedman,* 18 N.J. Super. 367, 87 A (2d) 336 (1952); *Weinsklar Realty Co. v. Dooley,* 200 Wis. 412, 228 N.W. 515 (1930). Unless the debt instrument or the instrument of guaranty prohibits assignment, an assignment does not release the guarantor, who is discharged only when the underlying debt has been paid or otherwise satisfied in full. *Id.* The guarantor is not discharged if the debtor files a petition for bankruptcy. The automatic stay under 11 U.S.C. § 362(a) does not extend to actions against guarantors of the debtor. *See, e.g., Otoe County National Bank v. W & P Trucking Co.,* 754 F. (2d) 881 (10th Cir. 1985); *In re Advanced Ribbons and Office Products, Inc.,* 125 B.R. 259 (Bankr. 9th Cir. 1991); *In re Murall, Inc.,* 118 B.R. 400 (Bankr. D.S.C. 1989); *In re Philadelphia Gold Corporation,* 56 B.R. 87 (Bankr. E.D. Pa. 1985). Thus, the creditor may bring a separate state court action to enforce the guaranty despite the bankruptcy petition. *In re Murall, supra.*

By their express terms, the guaranty agreements here in issue were: (1) assignable; (2) enforceable without prior demand on the debtor for payment; and (3) enforceable without any recourse to other security for payment and despite the creditor's release of any other security. Therefore, the assignment from TransAmerica to AMA did not discharge the guarantors. We reverse the circuit court's judgment to the contrary.

The Strasburgers argue that our decision in *Jeffcoat v. Morris*, 300 S.C. 526, 389 S.E. (2d) 159 (Ct. App. 1989), controls this case. *Jeffcoat* applied the general rule that when the debtor reacquires the debt instrument by payment to the holder, the debt is satisfied or extinguished. That case involved comakers on a promissory note. One of the comakers became insolvent and was placed in receivership. The receiver purchased the note from the holder with proceeds from the sale of the insolvent's property. He then sued another comaker on the note. We held that on the facts presented there was no distinction between purchase of the note by the receiver and purchase of the note by the debtor himself. Thus, under the general rule mentioned above, the debt was extinguished and the comaker was discharged from liability on the note.

This case is different. AMA's purchase of TransAmerica's claim in bankruptcy was not the same as Top Brass purchasing its original debt from TransAmerica. AMA was not a receiver of the debtor's assets.[3] Unlike the receiver in *Jeffcoat*, AMA did not hold property of the debtor by the same right and title as the debtor. On the contrary, AMA was employed as the agent of the trustee in bankruptcy to act as a professional manager of the bankrupt's business operations. *See*, 11 U.S.C. § 327 (trustee may employ professional persons to assist in operating bankrupt's business). The management agreement with the trustee did not convey title or similar rights to the assets of the bankrupt estate.

More importantly, AMA was a bona fide creditor of the bankrupt estate. It acquired TransAmerica's Proof of Claim by an assignment for value in its capacity as a creditor. The transaction was a true assignment, not merely a reacquisition

---

[3] 11 U.S.C. § 105(b) expressly forbids the bankruptcy court from appointing a receiver in a bankruptcy case.

of the debt instrument by an alter ego of the debtor, as was the case in *Jeffcoat*. Furthermore, unlike the receiver in *Jeffcoat*, AMA did not use the debtor's assets to purchase the assignment. Instead, it paid to acquire TransAmerica's rights with its own funds. In addition, the funds used to purchase the assignment did not go to satisfy the claim being transferred. Unlike *Jeffcoat*, where the creditor was paid the full amount of the note and satisfied the mortgage, the claim in bankruptcy in this case was not paid or reduced. The money went directly to TransAmerica as consideration for an assignment of rights without reducing the liabilities of the bankrupt estate. Under the rule that an assignment does not release the guarantor, the Strasburgers remained subject to an action on the guaranty agreements without regard to the proceedings in bankruptcy.

## II.

AMA next argues the circuit court erred in refusing to direct a verdict in its favor on the guaranty agreements. AMA's motion for a directed verdict was made at the close of its case, before the Strasburgers were afforded the opportunity to prove their defenses to the claim. These defenses raised disputed issues of fact concerning the nature and terms of the guaranty agreements.[4] Because a directed verdict can be granted only when there are no material facts in dispute and the case presents only questions of law, the court properly denied AMA's motion for a directed verdict at this stage of the proceedings. *See*, Rule 50(a), SCRCP.

## III.

AMA also contends the circuit court erred in directing a verdict for TransAmerica on its cause of action for TransAmerica's breach of the assignment agreement. In the assignment agreement, TransAmerica covenanted to hold payments received from any source with respect to all or any part of the assigned debt in trust and to deliver the same to AMA. AMA adduced evidence tending to prove the Strasburgers paid $32,000 to TransAmerica as partial payment on the assigned debt. The evidence also showed that AMA made

[4] See footnote 2 above.

demand on TransAmerica to pay over this money, but that TransAmerica refused to pay.

The cause of action for this $32,000 was separate and apart from AMA's causes of action on the guaranty agreements and its claim against TransAmerica for alleged misrepresentation. The evidence created a distinct jury question as to whether TransAmerica breached a contractual obligation to pay over money it received from the Strasburgers in connection with the assigned debt. Because this claim was independent of AMA's other causes of action, the court erred in dismissing it as though it were merely a part of AMA's claim on the guaranty agreements. The court should have submitted the issue to the jury.

## IV.

AMA further argues that the circuit court erred in directing a verdict for TransAmerica on the cause of action for negligent misrepresentation.

In South Carolina, one may bring a common law action in tort for negligent misrepresentation. *Gilliland v. Elmwood Properties*, 301 S.C. 295, 391 S.E. (2d) 577 (1990); *Winburn v. Insurance Co. of North America*, 287 S.C. 435, 339 S.E. (2d) 142 (Ct. App. 1985). If the damage alleged is a pecuniary loss, the plaintiff must allege and prove the following essential elements to establish liability for negligent misrepresentation: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation. *See, Winburn, supra.*

Not every statement made in the course of commercial dealings is actionable at law. A mere statement of opinion, commendation of goods or services, or expression of confidence that a bargain will be satisfactory does not give rise to liability in tort. *Winburn v. Insurance Co. of North America, supra* (opinion that mechanic was "good" and that adjuster had faith in him); *Randall v. Smith*, 136 Ga. App. 823,

222 S.E. (2d) 664 (1975) (assurance that vehicle was in good condition and suitable for driving). However, if the defendant has a pecuniary interest in making the statement and he possesses expertise or special knowledge that would ordinarily make it reasonable for another to rely on his judgment or ability to make careful enquiry, the law places on him a duty of care with respect to representations made to plaintiff. *Hedley Byrne & Co. Ltd. v. Heller & Partners Ltd.* [1964] A.C. 465. Proof that the statement was made in the course of the defendant's business, profession, or employment is sufficient to show he has a pecuniary interest in making it, although he receives no consideration for it. *Winburn, supra.*

The duty of care is not a duty to take every possible care, still less is it a duty to be right; it is the familiar duty to exercise that care a reasonable man would take in the circumstances. *Cf. Citizens & Southern National Bank v. Arnold,* 240 Ga. 200, 240 S.E. (2d) 3 (1977); *Shaw v. Cook County Federal Savings & Loan Assn.,* 139 Ga. App. 419, 228 S.E. (2d) 326 (1976). There is no liability where information is furnished with a clear understanding that the defendant assumes no liability for its accuracy. *Hedley Byrne & Co. Ltd. v. Heller & Partners Ltd., supra.* Moreover, the plaintiff as part of his case must show that his reliance on the misrepresentation was reasonable. There is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence. *See, King v. Oxford,* 282 S.C. 307, 318 S.E. (2d) 125 (Ct. App. 1984); *First National Bank of Greenville v. United States Fidelity and Guaranty Co.,* 207 S.C. 15, 35 S.E. (2d) 47 (1946); *Moody v. Stem,* 214 S.C. 45, 60, 51 S.E. (2d) 163, 169 (1948) (Oxner, J., concurring); *cf., Gignilliat v. Borg,* 131 Ga. App. 182, 205 S.E. (2d) 479 (1974).

In this case, AMA contends that, in order to induce it to take assignment of the Proof of Claim in bankruptcy, TransAmerica made affirmative representations that the Strasburger guaranties were valid, enforceable, unconditional obligations. The evidence offered to support this assertion was the testimony of Anthony Grillo, a vice president of AMA, who negotiated the $3 million line of credit and the assignment agreement with TransAmerica. Grillo stated that one of the sticking points in the negotiations was whether

TransAmerica would include in the assignment agreement a representation that the Strasburger guaranties were valid. AMA's lawyer recommended that the guaranties should be warranted in the written agreement. Upon the advice of its lawyer, TransAmerica refused to include any such statement. At that point, Grillo asked TransAmerica's negotiator, Mr. Hentz, "Are these guarantees good guarantees?" Hentz assured him they were good. Grillo responded, "That's good enough for me, I don't need it in the papers, let's go on."

Grillo believed the transaction would not be consummated if he insisted on a written warranty of the guaranties in the assignment agreement, so he decided to proceed with the deal on the strength of Hentz's answer to his question. He admitted TransAmerica made no statements outside the guaranties as written. Grillo also testified that he discussed the guaranties with Roy Strasburger "quite often" before he executed the assignment agreement with TransAmerica. They had discussed problems Strasburger might or might not have with the guaranties and the potential of offering TransAmerica a money settlement to resolve the problem. In other words, AMA knew the Strasburgers wished to avoid liability on the guaranties. It also knew that TransAmerica wanted to reduce its risk by assigning them. AMA executed the assignment agreement knowing it contained no representation by TransAmerica that the guaranties were valid and knowing TransAmerica specifically refused to make such a representation.

This evidence failed, as a matter of law, to establish liability for negligent misrepresentation. There was no showing that Hentz's representation that the guaranties were "good" (whatever that should be taken to mean) was false at the time it was made. Indeed, the guaranties may well be valid, enforceable obligations, although that determination must await the outcome of AMA's suit against the guarantors. In any event, however, the statement could not give rise to liability for misrepresentation. AMA is a sophisticated commercial lender with expert knowledge in managing and financing large business corporations. It was engaged in arm's-length bargaining in which it was the initiating party, it was acting with professional legal advice, it understood that each party was seeking its own commercial advantage, it knew that each party was expected to exercise due diligence to protect its

own interests, and it knew that each party must make its own calculations of risk. When TransAmerica refused to stand behind the Strasburger guaranties as part of the assignment agreement, AMA could not, by the expedient of eliciting an extemporaneous opinion that the guaranties were "good," create a liability by operation of law that TransAmerica would not undertake by contract. Hentz's answer to Grillo's question was not intended to deceive; and it could not reasonably be relied upon as a substitute for a contractual warranty concerning the guaranties. It placed no liability on TransAmerica.

## V.

We have considered the remaining points on appeal and find them to be manifestly without merit. *See,* S.C. Code Ann. § 14-8-250 (Supp. 1991). Accordingly, we reverse the dismissal of AMA's claims on the guaranty agreements and for breach of the assignment agreement and remand those causes of action for trial. We affirm the judgment as to all other issues raised by the appeal.

Affirmed in part, reversed in part and remanded.

GARDNER and CURETON, JJ., concur.

