533 S.E.2d 334

**Douglas A. WEST, Respondent/Appellant,**

v.

**Joe Louis GLADNEY, Appellant/Respondent,**

v.

**John E. Brown, Third–Party Defendant.**

No. 3160.

Court of Appeals of South Carolina.

Heard March 9, 2000.

Decided May 8, 2000.

Rehearing Denied July 8, 2000.

Joyce Farr Cheeks, of Columbia, for appellant/respondent.

Warren C. Powell, of Bruner, Powell & Robbins, of Columbia, for respondent/appellant.

PER CURIAM:

Douglas A. West brought this action against Joe Louis Gladney alleging Gladney defaulted on a promissory note and seeking full payment of the note and attorneys' fees. The trial court granted West summary judgment, awarding him $563,816.47 on the debt, but limiting the award of attorneys' fees to $50,000. Both parties appeal. We affirm as modified.

## BACKGROUND

In August 1996, West sold all of his shares in Am–Pro Protective Agency, Inc. to Gladney. In payment thereof, Gladney gave West $150,000 and executed a promissory note for $525,000. Because the stock was subject to a possible first lien by NationsBank, the sales agreement provided that Gladney, within ninety days of closing, would obtain NationsBank's release for any liability West might incur as a result of Am–Pro's obligations to the financial institution. When Gladney failed to make the payments required by the note, West declared Gladney in default and accelerated all future payments.

West filed suit on June 3, 1997. Gladney answered and counterclaimed,[1] complaining that a few months after the sale, Am–Pro filed for bankruptcy. He explained that as part of the proceedings, the bankruptcy court granted NationsBank leave to execute against all collateral held by the bank, including the stock that is the subject of this action. Gladney contended NationsBank's actions made it impossible for West to deliver the stock and also claimed the value of the stock was rendered essentially worthless as a result of the bankruptcy and liquidation proceedings. He alleged West knew or should have known at the time of the sale about Am–Pro's financial condition and that the stock was essentially worthless. Gladney asserted that West's failure to fully inform him of Am–Pro's true financial status and West's failure to deliver the stock constituted failure of consideration, misrepresentation, or concealment of material facts or all three. Not only did Gladney contend these facts barred West from receiving any additional payments on the note, he also asserted they justified his recouping all funds already paid.

In September 1997, West moved for summary judgment on both his complaint and Gladney's counterclaim. West filed an affidavit in support of this motion on December 31, 1997. The hearing was originally scheduled for January 7, 1998, but was continued because of the trial schedule of Gladney's counsel. On the day of the rescheduled hearing, some two months later, Gladney provided West with his affidavit opposing summary judgment.

The trial court ruled that Gladney's affidavit was not timely and should not be considered. It found West fully performed his obligations under the sales agreement and note and that Gladney failed to make the payments when due or satisfy West's obligation to NationsBank. The court further held West "neither misrepresented the value of the shares of stock . . . nor did he know or have reason to know at or prior to the time of the sale" that their value was "anything other than the sales price." Accordingly, it awarded West summary judgment. The court, however, declined to award West the full

---

1. Gladney also asserted a third party complaint against John E. Brown, the president and principal stockholder of Am–Pro Protective Agency. This claim is not involved in the current appeal.

fifteen percent of the sum due as provided by the note for attorneys' fees. Instead, it found $50,000 to be a reasonable fee.

## STANDARD OF REVIEW

The grant of summary judgment is proper when it is clear no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. *Cafe Assocs., Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991). In ruling on a motion for summary judgment, the court must view the evidence and the inferences which can be drawn therefrom in the light most favorable to the non-moving party. *Id.* at 9, 406 S.E.2d at 164.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to [that] party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Baughman v. American Tel. & Tel. Co.,* 306 S.C. 101, 116, 410 S.E.2d 537, 545–46 (1991) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## DISCUSSION

### I. Gladney's Appeal

A. Timeliness of Affidavit

■ Gladney argues the trial court erred in holding that his affidavit in opposition to the motion for summary judgment filed on the date of the hearing should not be considered. We disagree.

Rule 56(c) of the South Carolina Rules of Civil Procedure specifies that when filing papers in response to motions for summary judgment, "[t]he adverse party may serve opposing affidavits not later than two days before the hearing." Rule

56(c), SCRCP. Our supreme court has ruled that the trial court may, in its discretion, "refuse to consider materials that were not timely served such that the opposing party had no time to prepare a response." *Black v. Lexington Sch. Dist. No. 2*, 327 S.C. 55, 60, 488 S.E.2d 327, 329 (1997). The *Black* court held the trial court did not abuse its discretion in refusing to consider an affidavit filed on the date of the hearing when the appellant's lawyer admitted he failed to serve the affidavit within the time required by Rule 56 and failed to assert any good excuse for that failure. *Id.*

In the present case, more than two months passed from the time West served his affidavit until the hearing. In spite of·this generous amount of time, Gladney did not file his affidavit opposing summary judgment until the ·day of the hearing. Moreover, Gladney failed to present any good ·cause for his failure to timely file the affidavit. Thus, under these circumstances, we find the trial court did not abuse its discretion in ruling the affidavit should not be considered. Accordingly, we will not consider the affidavit in our review.

### B. Summary Judgment

Gladney argues the trial court erred in granting West's motion for summary judgment because the record reveals that genuine issues of material fact exist as to whether West was guilty of making misrepresentations. We disagree.

Gladney contends his assertion of misrepresentation encompasses negligent as well as intentional misrepresentation. The elements of an action for fraud based on a representation include: "(1) a representation; (2) falsity; (3) its materiality; (4) knowledge of the falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon the truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Moorhead v. First Piedmont Bank & Trust Co.*, 273 S.C. 356, 359, 256 S.E.2d 414, 416 (1979). These elements must be established by clear, cogent, and convincing evidence. *Lundy v. Palmetto State Life Ins. Co.*, 256 S.C. 506, 183 S.E.2d 335 (1971).

In a claim for the common law tort of negligent misrepresentation ·where the damage alleged is a pecuniary

loss, the plaintiff must allege and prove the following essential elements:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.

*AMA Management Corp. v. Strasburger,* 309 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct.App.1992); *see also Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 468 S.E.2d 292 (1996). As part of his case, the plaintiff must establish that his reliance on the misrepresentation was reasonable. *AMA Management Corp.,* 309 S.C. at 223, 420 S.E.2d at 874. "There is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." *Id.* Moreover, "there can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter." *Harrington v. Mikell,* 321 S.C. 518, 522, 469 S.E.2d 627, 629 (Ct.App.1996). A determination of justifiable reliance involves the evaluation of the totality of the circumstances, "including the positions and relations of the parties." *Elders v. Parker,* 286 S.C. 228, 233, 332 S.E.2d 563, 567 (Ct.App.1985).

■ Fraud based on a misrepresentation and negligent misrepresentation both include a requirement that the plaintiff justifiably relied on the representation made by the defendant. In the case before us, John E. Brown, the chief executive officer of Am–Pro, negotiated the sale of West's stock as part of an agreement Gladney entered into with Am–Pro.[2] According to West, Gladney and his representatives had been present at Am–Pro headquarters for a number of weeks prior to any meaningful negotiations with him. Gladney had extensive conferences with Brown, and West contends Gladney had more access to the financial records than did West. West also asserts Gladney was in a better position than he to know the

---

2. Pursuant to the agreement, Gladney paid $600,000 to the Internal Revenue Service on Am–Pro's behalf and in exchange, Am–Pro agreed to reorganize the corporation.

financial status of Am–Pro as a result of Gladney's access to Brown and the corporation's books. West claims he never knew on or before the date of the sale that the value of his shares was anything other than the sales price negotiated with Gladney.

 Gladney produced no evidence to refute West's statements. Not only will we not consider Gladney's untimely affidavit, this court ordinarily will not consider statements of fact presented only in an attorney's argument in determining whether a genuine issue of material fact exists sufficient to preclude summary judgment. *See Gilmore v. Ivey*, 290 S.C. 53, 348 S.E.2d 180 (Ct.App.1986) (ruling the trial court properly disregarded the statements of counsel which reflected testimony appearing in depositions not otherwise entered into evidence). We find Gladney failed to establish a genuine issue of material fact that his reliance on any alleged representation by West was justified. Accordingly, the trial court did not err in granting West's motion for summary judgment.

## II. West's Appeal

West argues the trial court erred in refusing to award him attorneys' fees of fifteen percent of the amount due when the note specifically provided for such an award. We agree.

 When a note provides for attorneys' fees at a specific rate in the event collection becomes necessary, the amount of attorneys' fees is governed by the contract. *Dedes v. Strickland*, 307 S.C. 155, 414 S.E.2d 134 (1992); *NationsBank v. Scott Farm*, 320 S.C. 299, 305, 465 S.E.2d 98, 101 (Ct.App. 1995) ("In South Carolina, where a contractual obligation provides only that a party is to pay 'reasonable attorney's fees,' the amount is unliquidated and, therefore, requires a finding on the reasonableness of the award. On the other hand, where a contractual provision in a note provides for attorney's fees at a specific rate, the amount of attorney fees is governed by the contract."). In the· note Gladney signed and presented to West, he agreed:

> that if this note be placed in the hands of an attorney for collection, or if this debt, or any part thereof, be collected by an attorney, or by legal proceedings, of any kind, a reasonable attorney's fee of not less than fifteen (15%) percent, besides all costs and expenses incident upon such collection

shall be added to the amount due upon this note, and be collectible as a part thereof.

The note unequivocally provides for attorneys' fees at a specified rate. It is not for us to determine whether the parties' agreement was reasonable or wise, or whether they carefully guarded their rights. *See Sphere Drake Ins. Co. v. Litchfield,* 313 S.C. 471, 438 S.E.2d 275 (Ct.App.1993). Accordingly, we find West is entitled to an award of attorneys' fees of fifteen percent of the amount due on the note. The judgment is therefore modified to award attorneys' fees of $84,572.47.

For the foregoing reasons, the decision of the trial court is **AFFIRMED AS MODIFIED.**

HEARN, C.J., STILWELL, J., and MOREHEAD, Acting Judge, concur.