# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Associated Receivables Funding, Inc., Respondent,

v.

Dunlap, Inc.; James Stephen Dunlap, an Individual; Dunlap Industrial Coating Services, Inc.; Dunlap Industrial Services, Inc.; Classic Industrial Services, Inc.; and Mark Beuerle, an Individual, Defendants,

Of Which Classic Industrial Services, Inc. is the Appellant.

Appellate Case No. 2020-000320

―――――――――

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

―――――――――

Opinion No. 6064
Heard March 7, 2024 – Filed June 20, 2024

―――――――――

## AFFIRMED IN PART, VACATED IN PART, AND REMANDED

―――――――――

Steven Edward Buckingham, of The Law Office of Steven Edward Buckingham, LLC, of Greenville, for Appellant.

Townes Boyd Johnson, III, of Townes B. Johnson, III, LLC, of Greenville, for Respondent.

―――――――――

**MCDONALD, J.:** In this action to enforce a security interest, Classic Industrial Services, Inc. (Classic)[1] argues the circuit court erred in finding it liable under South Carolina's Uniform Commercial Code (UCC), the common law theory of negligent misrepresentation, and the equitable theory of promissory estoppel. Classic further asserts the circuit court erred in calculating Associated Receivables Funding, Inc.'s (ARF)[2] damages. We affirm in part, vacate in part, and remand.

**Facts and Procedural History**

On September 24, 2010, ARF and Dunlap, Inc. (Dunlap)[3] contracted for ARF to provide Dunlap with funding in exchange for receivables (the Factoring Agreement). Pursuant to its terms, the Factoring Agreement was executed under and governed by South Carolina law. As consideration for entering the Factoring Agreement, Dunlap gave ARF a security interest in its accounts receivable and contract rights, "represented by a UCC Financing Statement (UCC-1) filed with the South Carolina Secretary of State."

In April 2014, ARF began purchasing Dunlap's accounts receivables for which Classic was the account debtor. For these receivables (the Dunlap Invoices), each invoice Dunlap provided to Classic stated, "For value received, this invoice has been assigned to, owned by and payable to Associated Receivables Funding, Inc. PO Box 16253, Greenville, SC 29606. Any offsets, claims, etc. must be reported to Associated Receivables Funding, Inc. immediately upon receipt of this Invoice." On each Dunlap Invoice, Dunlap also stamped this language:

> For value received, we hereby assign and transfer this
> invoice and its proceeds to Associated Receivables
> Funding, Inc. who is the owner of this invoice

---

[1] Classic is a Delaware corporation operating as a contractor out of Louisiana.

[2] ARF is a South Carolina factoring company principally engaged in making accounts receivable financing available to customers. A factoring agreement allows a small business to sell outstanding invoices to a third party in exchange for upfront cash.

[3] Defendants Dunlap, James Stephen Dunlap, Dunlap Industrial Coating Services, Inc., Dunlap Industrial Services, Inc., and Mark Beuerle are not parties to this appeal. Dunlap, which is no longer in business, was a South Carolina company principally engaged in providing industrial coating services.

unencumbered by any other security or claims, and
pursuant to the master agreement. The undersigned does
herewith assign all lien rights, chooses [sic] in action,
chattel paper or contract rights. We further certify that
the goods have been shipped and/or services have been
rendered in agreement with all terms and conditions.

In late 2014, Classic hired Dunlap as a subcontractor on a project for American
Electric Power in Pittsburg, Texas (the Project). In October 2015, Classic and
Dunlap entered a written agreement memorializing their relationship (the
Subcontract).[4] Under subsection K of the Subcontract, Classic agreed "[t]he terms,
and provisions of this subcontract shall extend to and be binding upon the heirs,
successors, executors, administrators, trustees and assigns of the parties hereto."

Upon receipt of each Dunlap Invoice, Classic also completed and emailed ARF's
"Work Completion Form" directly to ARF. Classic's certifications included this
language:

> This is to certify that the below work as described has
> been satisfactorily completed and to acknowledge that
> payment for this invoice is not contingent upon any other
> work being completed.
>
> I understand that payment will not be processed until this
> form is completed and returned to the above address.
>
> I certify that the above work has been completed in full,
> all invoicing for material used has been provided to
> project designee. The work performed has been
> inspected and complete payment should be processed to
> PO Box 16253, Greenville, SC 29606.

From April 2014 until February 2016, Classic paid ARF for monies advanced on at
least forty Dunlap Invoices totaling over a million dollars. Beginning with two

---

[4] ARF's executive vice president of operations (VPO), Kevin Gilbert, testified that
he never saw the Subcontract until his deposition. He explained he did not need to
see the Subcontract because ARF "only purchased invoices [from Dunlap] once we
received confirmation [from Classic] that the invoice was going to pay."

March 28, 2016 invoices, however, Classic failed to remit payment on fifteen invoices—totaling $202,390.92—that Classic had certified ARF should pay. No later than April 2016, Classic became suspicious that Dunlap had not paid certain suppliers Dunlap used to satisfy its obligations under the Subcontract. Classic immediately demanded proof of payment from Dunlap to address these concerns.[5] Yet, Classic continued to represent to ARF that complete payment should be processed on the Dunlap Invoices through May 9, 2016. It was not until July 2016 that ARF learned Classic was not going to pay the remaining Dunlap Invoices. At the time of trial, ARF was owed $323,718.31 on the unpaid invoices.[6]

ARF filed this action against Dunlap, Classic, and others, and the circuit court held a nonjury trial. The parties agreed to dismiss Dunlap without prejudice; the remainder of the case involved ARF's claims against Classic. At the conclusion of the testimony, both parties moved for directed verdicts. The circuit court invited the parties to submit post-trial briefs and subsequently issued an order finding in favor of ARF as to all three causes of action asserted against Classic. Citing sections 36-9-607 and 36-9-404 of the South Carolina Code (2003 & Supp. 2023), the court ruled:

> [A] secured party may enforce the obligations of an account debtor and exercise the rights of the debtor with respect to the obligation of the account debtor. A secured party's rights, however, are subject to all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract unless an account debtor has made an enforceable agreement not to assert defenses or claims.

---

[5] Initially, Dunlap provided Classic written assurances that it was or would be paying its suppliers, including Carboline and Hertz Equipment Rental Company. When these assurances proved to be false, Classic issued Dunlap a May 12, 2016 notice of default, giving Dunlap five days to provide conclusive assurance that the suppliers had been paid. Because Dunlap was unable to cure its default, Classic terminated Dunlap on May 17, 2016. Classic subsequently paid Hertz approximately $142,000 and Carboline approximately $37,000 to satisfy any lien claims they might have against the Project.

[6] This figure included the balance on the unpaid invoices, plus interest at the rate of 24.64% set forth in the Factoring Agreement.

> In the matter at hand, [Classic], the account debtor, agreed not to assert defenses or claims against payment of each Dunlap Invoice to [ARF], the secured party, when [Classic] represented to [ARF] that the work was inspected and "complete payment should be processed" to [ARF]. This Court finds that the ordinary, plain meaning of "should" is the past tense of shall and, accordingly, connotes a duty or obligation. As [Classic] obligated itself to process complete payment to [ARF], [ARF], in accordance with South Carolina Code Ann. § 36-9-607, is entitled to enforce [Classic's] obligations under the Dunlap Invoices. [Classic], accordingly, is liable to [ARF] for the Dunlap Invoices in the amount of Two Hundred Two Thousand, Three Hundred Ninety and 92/100ths Dollars ($202,390.92).

(internal citations omitted). The circuit court also ruled against Classic on ARF's claims for negligent misrepresentation and promissory estoppel, awarding ARF judgment in the amount of $323,718.31. Classic filed no post-trial motion, but timely appealed.

**Standard of Review**

"An action to construe a contract is an action at law reviewable under an 'any evidence' standard." *Miller Constr. Co., LLC v. PC Constr. of Greenwood, Inc.*, 418 S.C. 186, 195, 791 S.E.2d 321, 326 (Ct. App. 2016) (quoting *Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001)). "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law." *Id.* (quoting *Temple v. Tec–Fab, Inc.*, 381 S.C. 597, 599–600, 675 S.E.2d 414, 415 (2009)). "The Court will not disturb the trial court's findings unless they are found to be without evidence that reasonably supports those findings." *Id.* (quoting *Temple*, 381 S.C. at 600, 675 S.E.2d at 415). "When legal and equitable actions are maintained in one suit, the court is presented with a divided scope of review, and each action retains its own identity as legal or equitable for purposes of review on appeal." *Wright v. Craft*, 372 S.C. 1, 17, 640 S.E.2d 486, 495 (Ct. App. 2006). "In an action at equity, tried by a judge alone, an appellate court may find facts in accordance with its own view of the preponderance of the evidence." *Inlet Harbour v. S.C. Dep't of Parks, Rec. & Tourism*, 377 S.C. 86, 91, 659 S.E.2d 151, 154 (2008).

**Analysis**[7]

## I. Enforcement of Security Interest/Existence of a Contract

Classic first argues the circuit court erred in finding it liable for ARF's damages under section 36-9-607, in derogation of Classic's rights under section 36-9-404. We disagree.

Regarding the rights acquired by—and the claims and defenses against—an assignee, § 36-9-404 states in pertinent part:

> (a) Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:
>
> (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
>
> (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.
>
> (b) Subject to subsection (c) and except as otherwise provided in subsection (d), the claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes.

---

[7] ARF argues Classic failed to preserve most of its arguments because it filed no Rule 59(e), SCRCP, motion. We disagree. As Classic properly notes, Rule 52 governs in this nonjury context. *See* Rule 52(b), SCRCP ("When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the trial court an objection to such findings or has made a motion to amend them or a motion for judgment.").

. . . .

> (d) In a consumer transaction, if a record evidences the account debtor's obligation, law other than this chapter requires that the record include a statement to the effect that the account debtor's recovery against an assignee with respect to claims and defenses against the assignor may not exceed amounts paid by the account debtor under the record, and the record does not include such a statement, the extent to which a claim of an account debtor against the assignor may be asserted against an assignee is determined as if the record included such a statement.

> . . . .

S.C. Code Ann. § 36-9-404 (2003 & Supp. 2023).

Under section 36-9-102(73)(A) and (D) of the S.C. Code Ann. (2003 & Supp. 2023), a "secured party" means a "person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding" or a "person to which accounts, chattel paper, payment intangibles, or promissory notes have been sold."  An "account debtor" is "a person obligated on an account, chattel paper, or general intangible.  The term does not include persons obligated to pay a negotiable instrument, even if the instrument constitutes part of chattel paper."  S.C. Code Ann. § 36-9-102(a)(3) (2003 & Supp. 2023).  In distinguishing a debtor from an account debtor, the UCC defines a "debtor" as "a seller of accounts, chattel paper, payment intangibles, or promissory notes."  S.C. Code Ann. § 36-9-102(a)(28)(B) (2003 & Supp. 2023).

Here, ARF is the assignee/secured party, Dunlap is the assignor/debtor, and Classic is the account debtor.  Classic argues the work completion certification language is neither valid nor enforceable against Classic by ARF, but we find evidence supports the well-reasoned findings of the circuit court.

VPO Gilbert testified that when ARF "factor[s] a receivable, our client provides us an invoice.  Once we verify and confirm that invoice is a valid invoice, we will purchase that invoice and advance the money to our client."  Gilbert explained that Classic emailed ARF directly regarding the Dunlap Invoices and attached both "a work completion form signed by Classic" and "a copy of the actual invoice

submitted to Classic by Dunlap."  He stated, "We funded each and every one of these invoices based on this confirmation."  Prior to July 2016, ARF "had no reason to believe that [Classic] would not pay, since all confirmations prior to that had been paid."

Regarding the Dunlap Invoices, Gilbert agreed on cross-examination that "nowhere on here does it say that [Classic] is waiving any defenses."  This exchange followed:

> Q: Okay.  If there is no waiver of the defenses in the contract and there is no indication that this is a complete—that this is a complete and final obligation for payment on behalf of Classic, would you agree with me that this does not waive any defenses?
>
> A: I do not agree with you.
>
> Q: Okay.  Did you provide any consideration to Classic Industrial for waiving defenses?
>
> A: We provided funding for them for and to continue work.
>
> Q: You provided funding to Dunlap, correct?
>
> A: Correct.
>
> Q: Did you pay consideration to Classic Industrial Services, as required by the UCC?
>
> A: Nothing was paid to Classic Industrial.
>
> Q: In fact, you don't have any other agreement, other than these certifications, you had no other agreement with Classic Industrial Services, correct?
>
> A: Correct.
>
> Q: You didn't have them sign a guarantee, correct?

A: No guarantee.

Q: You didn't have them sign a promissory note?

A: No note.

Q: And there is nothing contained in this language that says you waive your defenses under the UCC, correct?

A: Nothing that I read, no.

On redirect, Gilbert stated, "If we didn't fund Dunlap, they would have no money to continue" and noted Classic benefitted from Dunlap continuing to work on the Project. Gilbert testified ARF would not have purchased any of the Dunlap Invoices without Classic's representations on the Work Completion Form.

Controller Jessica DeLaune testified on behalf of Classic and admitted that even after Classic had notice Dunlap was not paying its subcontractors and suppliers in April 2016, Classic continued to certify to ARF that the work was complete and ARF should pay Dunlap. However, DeLaune explained, "We were of the understanding that Carboline had been paid and it was remedied." After being questioned about the definition of the word "should" and reading the definition from the Oxford English Dictionary, DeLaune agreed "should" is "used to indicate an obligation, duty, or correctness typically when criticizing someone's actions." DeLaune testified Classic did not certify any Dunlap Invoice after May 5, 2016.

On re-cross, DeLaune testified, "I'm a CPA and I have been in business a very long time and this certification doesn't waive any of our rights of offset, based on my experience, so I don't know why they would rely on just the work completion certification." When asked whether ARF changed its position based on Classic's certification, she said, "I don't know that I can agree to that. I don't know."

Initially, we note the existence of a contract is a question of fact and our scope of review in this action at law tried without a jury, "extends merely to the correction of errors of law." *Miller Constr. Co.*, 418 S.C. at 195, 791 S.E.2d at 326 (quoting *Pruitt*, 343 S.C. at 339, 540 S.E.2d at 845). Here, secured party ARF offered to fund Dunlap's receivables and keep Dunlap at work on Classic's Project. ARF persuasively argues Classic accepted ARF's offer of payment on each of the Dunlap Invoices and received the benefit of Dunlap remaining at work on its Project. *See Regions Bank v. Schmauch*, 354 S.C. 648, 660–61, 582 S.E.2d 432,

439 (Ct. App. 2003) ("A contract is an obligation which arises from actual agreement of the parties manifested by words, oral or written, or by conduct.").  In emailing each executed Work Completion Form to ARF, Classic represented that it had inspected Dunlap's work and that "complete payment should be processed."

Although Classic admits "should" and "shall" share a common origin, and "should" is "technically" the past tense of "shall," Classic argues there is disagreement "as to whether and what extent 'should' carries the force of a mandate."  While South Carolina courts have not specifically ruled on the meaning of the word "should" in this context, the Fourth Circuit has noted that when standing alone, the term "can express the notion of requirement or obligation." *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 700 n.12 (4th Cir. 2019) (citing *Should*, Webster's Third New International Dictionary Unabridged (2002) ("used . . . to express duty, obligation, [or] necessity")).

We find it problematic to construe "should" as discretionary in the context of processing a payment for work certified to be complete and payable in the course of an ongoing business relationship.  Instead, it seems logical to construe "should" as a requirement or obligation in such a contractual context. *See Bluffton Towne Ctr., LLC v. Gilleland-Prince*, 412 S.C. 554, 569, 772 S.E.2d 882, 890 (Ct. App. 2015) ("Generally, a contract is 'interpreted according to the terms the parties have used, and the terms are to be taken and understood in their plain, ordinary, and popular sense.'" (quoting *Stanley v. Atlantic Title Ins. Co.*, 377 S.C. 405, 414, 661 S.E.2d 62, 67 (2008))).  Therefore, we find no error in the circuit court's determination that by emailing the work completion forms certifying Dunlap's work to ARF, Classic obligated itself to complete payment to ARF.  We further agree with the circuit court's finding that ARF is entitled to enforce Classic's obligations under the Dunlap Invoices. *See* § 36-9-607(a)(1) (providing that if "so agreed, and in any event after default," a secured party "may notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party).[8]

---

[8] Classic encourages us to follow the decision reached in *Factor King, LLC v. Block Builders, LLC*, which Classic argues is "substantially identical to the circumstances of the instant case in both law and fact."  192 F. Supp. 3d 690 (M.D. La. 2016).  But we find *Commercial Capital Holding Corp. v. Team Ace Joint Venture*, 2000 WL 726880 (E.D. La. June 2, 2000), which *Factor King* distinguishes, more persuasive.  There, the Louisiana district court granted summary judgment to the plaintiff (Commercial Capital), against the general contractor (Team Ace). *Id*. at *1.  Team ACE had entered subcontracting

Even if the Work Completion Forms did not contractually bind Classic, ARF and Classic mutually intended to be bound through their conduct. *See Stanley Smith & Sons v. Limestone Coll.*, 283 S.C. 430, 433, 322 S.E.2d 474, 477 (Ct. App. 1984) ("If agreement is manifested by words, the contract is said to be express. If it is manifested by conduct, it is said to be implied. In either case, the parties must manifest a mutual intent to be bound." (internal citations omitted)). ARF extended a line of credit to Dunlap for the completion of work on the Project and Classic availed itself of the benefits. Considering that ARF remitted payment to Dunlap on more than forty Dunlap Invoices certified by Classic—totaling over a million dollars from April 2014 through February 2016—we agree with the circuit court that a contract existed between Classic and ARF. The substance of this agreement was that ARF advanced money to Dunlap so Dunlap could complete the work Classic needed on the Project. When Classic failed to pay ARF on the Dunlap Invoices that Classic itself certified should be paid, Classic breached the agreement. Accordingly, we affirm the circuit court's finding that Classic is liable to ARF for the $202,390.92 owed on the unpaid invoices. *See Miller Constr. Co.*, 418 S.C. at 195, 791 S.E.2d at 326 (holding an appellate court will not disturb the trial court's findings unless there is no evidence to support those findings).

## II.   Negligent Misrepresentation

Next, Classic argues the circuit court erred in finding it liable to ARF under a common law theory of negligent misrepresentation. Classic contends the circuit

---

agreements with SIMS, and SIMS assigned receivables from its Team Ace subcontract agreements to Commercial Capital in return for money advanced to SIMS pursuant to a factoring agreement. *Id*. Before Commercial Capital would advance funds to SIMS, Team Ace would approve the sub's request and "then execute the 'Invoice Acknowledgement Agreement' wherein Team Ace would acknowledge that the invoice presented would be paid and specifically waived any right of setoff, defense, counterclaim, or recoupments against SIMS in connection with that invoice." *Id*. Commercial Capital also required that SIMS sign the Invoice Acknowledgement Agreement and this process continued until SIMS breached its contract with Team Ace. *Id.* Team Ace then refused payment to Commercial Capital on forty-two invoices approved by Team Ace's project managers. *Id.* at *6. As Commercial Capital had advanced over a million dollars to SIMS based on representations made by Team Ace—and twenty-nine prior such invoices were submitted and approved by Team Ace project managers without question—the district court found Team Ace was "equitably estopped from avoiding the agreements it entered into with" Commercial Capital. *Id*. at *5.

court misapplied the essential elements of this cause of action and failed to substantiate its determination of liability with evidentiary support. We disagree.

In *Quail Hill, LLC v. County of Richland*, our supreme court explained that to prove a claim for the common law tort of negligent misrepresentation, a plaintiff is required to establish the following elements:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

387 S.C. 223, 240, 692 S.E.2d 499, 508 (2010) (quoting *West v. Gladney*, 341 S.C. 127, 134, 533 S.E.2d 334, 337 (Ct. App. 2000)).

"There is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." *Id.* (quoting *AMA Mgt. Corp. v. Strasburger*, 309 S.C. 213, 223, 420 S.E.2d 868, 874 (Ct. App. 1992)). "[W]hile issues of reliance are ordinarily resolved by the finder of fact, 'there can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter.'" *Id.* (quoting *McLaughlin v. Williams*, 379 S.C. 451, 457–58, 665 S.E.2d 667, 671 (Ct. App. 2008)). "A determination of justifiable reliance involves the evaluation of the totality of the circumstances, which includes the positions and relations of the parties." *Id.*

Here, Classic misrepresented to ARF on the work certification forms accompanying the fifteen unpaid Dunlap Invoices that "complete payment should be processed" despite learning as early as April 2016 that Dunlap had not paid its subcontractors or suppliers. Classic made these representations in the course of its business and had a pecuniary interest in making them. *See, e.g.*, *Winburn v. Ins. Co. of North America*, 287 S.C. 435, 442, 339 S.E.2d 142, 146–47 (Ct. App. 1985) ("The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at the time." (quoting Restatement (Second) of Torts § 552, Cmt. d, at 129–30 (1977)). Hence, the circuit court properly found ARF satisfied the first two elements—"(1) the defendant made a false representation to the plaintiff [and] (2) the defendant had a

pecuniary interest in making the statement"—of its negligent misrepresentation claim. *Id.* at 240, 692 S.E.2d at 508 (quoting *West*, 341 S.C. at 134, 533 S.E.2d at 337).

The duty of care necessary for a negligent misrepresentation claim does not require a defendant to take every possible care, but it is a duty to use the care necessary to communicate truthful information. *Quail Hill*, 387 S.C. at 240, 692 S.E.2d at 508. Classic had the specialized knowledge to determine any necessary offsets to the Dunlap Invoices as well as whether it would pay the Dunlap Invoices and underlying claims thereto. *See AMA Mgmt.*, 309 S.C. at 223, 420 S.E.2d at 874 ("[I]f the defendant has a pecuniary interest in making the statement and he possesses expertise or special knowledge that would ordinarily make it reasonable for another to rely on his judgment or ability to make careful enquiry, the law places on him a duty of care with respect to representations made to plaintiff."). Even after learning Dunlap was not meeting its obligations, Classic represented to ARF on fifteen separate occasions that "complete payment should be processed." Classic's proper disclosure of Dunlap's breach would have enabled ARF to avoid the resulting foreseeable harm of advancing funds for invoices that went unpaid.

As to the final elements of negligent misrepresentation—that "the plaintiff justifiably relied on the representation" and "the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation"—there is evidence in the record that ARF justifiably relied on Classic's representations that the work had been completed and it should process payment just as it previously had on more than forty Dunlap Invoices certified by Classic. *Quail Hill*, 387 S.C. at 240, 692 S.E.2d at 508. Evidence supports the finding that ARF suffered pecuniary loss as the proximate result of its reliance on Classic's representations. For these reasons, the circuit court properly awarded ARF damages for Classic's negligent misrepresentations.

## III.    Promissory Estoppel

Classic further contends the circuit court erred in finding for ARF on its promissory estoppel claim. Because we affirm the circuit court's findings as to ARF's breach of contract and negligent misrepresentation claims, and ARF may have only one damages recovery, we decline to further consider the promissory estoppel claim. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting a reviewing court need not address remaining issues when resolution of a prior issue is dispositive).

## IV.    Damages

Finally, Classic contends the circuit court erred in awarding damages by failing to consider that ARF's contract was with Dunlap and by disregarding the inequitable consequences resulting from an award of interest on the unpaid invoices from Classic to ARF.  While we agree with the circuit court that ARF is entitled to some interest, we find problematic the circuit court's use of the 24.64% interest rate from the Factoring Agreement between ARF and Dunlap in calculating the interest due from Classic.

Classic properly notes it was not a party to the Factoring Agreement or any other agreement to pay ARF at a specified interest rate.  Because the record does not offer evidence to suggest that prior to this litigation Classic was aware of the interest terms in the Factoring Agreement, we vacate the interest award and remand for the circuit court to calculate the interest Classic owes on the $202,390.92 in unpaid invoices at the 8.75% statutory interest rate.  *See*, *e.g.*, *Taylor, Cotton & Ridley, Inc. v. Okatie Hotel Grp., LLC*, 372 S.C. 89, 99, 641 S.E.2d 459, 464 (Ct. App. 2007) (remanding for determination of interest at 8.75% statutory rate where evidence in the record supported that general contractor and subcontractor contractually agreed to higher interest rate of 18% per annum but owner did not contract for the higher rate); S.C. Code Ann. § 34-31-20(A) (Supp. 2023) (setting statutory interest rate of 8.75% in cases of accounts stated and monies due).

## Conclusion

For the foregoing reasons, the circuit court's order is

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

**THOMAS and HEWITT, JJ., concur.**