16875

THOMAS & HOWARD CO. v. FOWLER *ET AL.*
(82 S. E. (2d) 454)

Messrs. *James W. Workman* and *J. R. Flynn,* of Union, *for Appellants,*

Messrs. *Lyles & Lyles,* of Spartanburg, *for Respondent,*

June 1, 1954.

OXNER, Justice.

This is an appeal from an order sustaining a demurrer to defendants' answer upon the ground that the facts stated

therein are insufficient to constitute a defense, and further sustaining a demurrer to defendants' counterclaim upon the ground that it does not state facts sufficient to constitute a cause of action. After doing so, the Court awarded judgment for the plaintiff.

Defendants, who operated a retail grocery store, became indebted to the plaintiff, Thomas & Howard Company, in the sum of $3,547, for goods and merchandise sold and delivered. On May 30, 1951, they gave their note for the amount of this indebtedness, payable in 71 successive weekly installments, beginning June 6, 1951, with interest after maturity at the rate of 6%. On the same date, in order to secure the payment of said note and any merchandise thereafter purchased, defendants executed and delivered to the plaintiff a chattel mortgage covering all fixtures, groceries and merchandise in their place of business, together with any additions or replacements made thereto. In reference to future advances, the mortgage provided:

"It is further agreed that this mortgage shall secure any further advances of merchandise made to us, the amount of which shall be determined by the said Thomas & Howard Company, a corporation, and any merchandise so advanced shall be paid for not later than one week after delivery of the same. * * * It is distinctly understood and agreed that additional advances of merchandise are to be made only at the option of Thomas & Howard Company and such advances may be discontinued at any time it elects to do so."

There was paid on said note and mortgage between May 31, 1951, and April 21, 1952, the sum of $1,266.54. No payments were made after the latter date. The defendants being in default, in November, 1952, the plaintiff brought an action in claim and delivery for possession of the property covered by said mortgage. In due course the defendants answered and interposed a counterclaim, but did not give a redelivery bond. After obtaining possession, the property was sold by the plaintiff under the terms of said chattel mortgage and the proceeds credited on the indebtedness.

In their answer defendants admitted executing said note and mortgage, but alleged that they were fraudulently induced to do so by promises and representations which the plaintiff had no intention of performing, and further claimed duress. They alleged that plaintiff's agent, as a part of a general fraudulent design and scheme to induce them to execute said note and mortgage, falsely made the following promises with no intention of performing same: (1) That the plaintiff "would make them advances of merchandise in the future as the defendants so desired", (2) that "defendants could pay for this merchandise so advanced at the end of thirty days from the date of invoice", and (3) that "said mortgage would not be placed on the public record but that the same would be merely attached to defendants' account ledger sheets by the plaintiff". The duress claimed was that plaintiff's agent stated that if the defendants did not execute said mortgage, plaintiff "would go to Spartanburg and have them closed up". It was further alleged that the plaintiff, in disregard of said promises, immediately recorded said mortgage and refused to make any further advances whatsoever to the defendants.

In the counterclaim the foregoing acts of fraud are repeated and damages claimed as a result thereof. It was alleged that as a result of recording said mortgage defendants were unable to obtain further credit from other wholesalers which forced them to discontinue their business. It was further alleged that defendants were wrongfully deprived of possession of their property through seizure in the claim and delivery proceeding based on a mortgage which was null and void by reason of fraud.

We shall first consider plaintiff's contention, which The Court below sustained, that since the alleged fraudulent promises relate to acts to be performed in the future, they will neither support an action for deceit nor form a basis for rescinding a contract induced by such promises. The general rule is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on un-

fulfilled promises or statements as to future events. However, there has been engrafted in most jurisdictions an exception or limitation to the effect that fraud may be based on promises made with an intention not to perform the same, or, as sometimes expressed, on promises made without an intention of performance. The subject is annotated at length in 51 A. L. R., beginning on page 46. The following conclusion is found on page 63. "According to the weight of authority, if the person making the promise or statement as to a future event is guilty of an actual fraudulent intent, and makes the promise or misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representations." The rule just stated has been followed in this jurisdiction in a number of cases. Perhaps the leading one is *Palmetto Bank & Trust Co. v. Grimsley,* 134 S. C. 493, 133 S. E. 437, 51 A. L. R. 42, where the authorities are ably reviewed by Mr. Justice Cothran. In *Coleman v. Stevens,* 124 S. C. 8, 117 S. E. 305, 307, the Court sustained the following charge: "A future promise is not fraudulent, unless such a future promise was part of a general * * * scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury."

In *Armour Fertilizer Works v. Burckhalter,* 141 S. C. 232, 139 S. E. 465, the Court held, quoting syllabus: "A misrepresentation in obtaining mortgage in the nature of a promise to supply mortgagor with fertilizer, if established, constitutes a complete defense to equitable cause of action for the foreclosure of the mortgage."

The case of *Palmetto Bank & Trust Co. v. Grimsley, supra,* involved the foreclosure of a mortgage given by the defendant to the plaintiff bank covering eight separate pieces of real estate, including the lot where the mortgagor resided. The defense was that the defendant was induced to execute this mortgage by false promises on the part of the plaintiff

bank which it never intended to fulfill to the effect (1) that the note, although payable twelve months after date, would be renewed and carried by the bank as long as the defendant desired, (2) that the bank would finance certain building and improvement plans of the defendant by which portions of the mortgaged property would be placed upon the market, so as to enable the defendant gradually to liquidate the debt, and (3) that in the event of the defendant's death before the debt was paid, the bank would release his residence lot from the lien of said mortgage. The Court held that this constituted a valid defense authorizing the rescission of the mortgage if it was shown that these promises were fraudulently made with no intention of fulfilling them and induced the defendant to execute said mortgage.

It would seem clear under the foregoing authorities that the fact that the promises alleged in the answer and counterclaim relate to acts to be performed in the future does not preclude a defense of fraud or an action for deceit.

Plaintiff takes the further position that the alleged promises tend to vary or contradict the provisions of the mortgage and, therefore, cannot form the basis of fraud. The Court below so held. But this contention is certainly not applicable to the alleged fraudulent promise not to record the mortgage. Since this allegation is sufficient against demurrer to sustain the charge of fraud, it is not necessary to determine whether evidence to sustain the other promises would be admissible. The rule is well established that a complaint or counterclaim is not subject to demurrer if it contains any allegations entitling such party to relief. *Flowers v. Price,* 190 S. C. 392, 3 S. E. (2d) 38; *Tolbert v. Greenwood Cotton Mill,* 213 S. C. 43, 48 S. E. (2d) 599. The same rule applies to an answer. A demurrer must be directed to the whole pleading and not to a part thereof. *Caldwell v. McCaw,* 141 S. C. 86, 139 S. E. 174.

We are, therefore, not to be understood as passing upon the question of whether the parol-evidence rule is applicable where, as here, the validity of the writ-

ten instrument is challenged on the ground of fraud and the instrument itself is the subject of dispute. Also left undecided is the question of whether defendants can complain of fraud with reference to the promise to make future advancements of merchandise when by reading the mortgage they could have ascertained that this was made optional with the plaintiff. In other words, at the trial it will be proper to determine whether any deception on the part of the defendants in this respect was the result of their own reckless disregard of their duty to avail themselves of the opportunity and means at hand to protect their own interest.

Finally, it is claimed that the demurrer should be sustained upon the ground that by making payments on the mortgage between May 31, 1951, and April 21, 1952, aggregating $1,266.54, defendants ratified the transaction and waived the alleged fraud. The answer depends upon the facts developed at the trial. This question cannot be determined on the pleadings before us.

We now turn to the claim of duress. The alleged statement by plaintiff's agent that unless the defendants secured their indebtedness by the mortgage, the plaintiff "would go to Spartanburg and have them closed up" was nothing more than a threat that unless secured, plaintiff would resort to legal proceedings to collect its account. This does not constitute duress. 17 Am. Jur., Duress and Undue Influence, Section 17.

In conclusion, it may not be amiss to say that in considering the demurrer, we have assumed as true the allegations of the answer and counterclaim. The evidence may or may not sustain same.

The order sustaining the demurrer is reversed and the case remanded to the Circuit Court, with leave to the parties to renew the motions not heard by the Circuit Judge and to make any further motions with reference to the pleadings as they may be advised.

STUKES, TAYLOR and LEGGE, JJ., and J. FRANK EATMON, Acting Associate Justice, concur.