PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

TOM HUGHES MARINE, INCORPORATED,
Plaintiff-Appellant,

v.

No. 99-2046

AMERICAN HONDA MOTOR COMPANY,
INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(CA-98-255-3-17)

Argued: May 5, 2000

Decided: July 11, 2000

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge, and
Jerome B. FRIEDMAN, United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Chief Judge Wilkinson and Judge Friedman joined.

_____

COUNSEL

ARGUED: Demetri K. Koutrakos, CALLISON, TIGHE & ROBIN-
SON, L.L.P., Columbia, South Carolina, for Appellant. Wade H.

Logan, III, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Charleston, South Carolina, for Appellee. **ON BRIEF:** David Reece Williams, III, CALLISON, TIGHE & ROBINSON, L.L.P., Columbia, South Carolina, for Appellant. Amy Yager Jenkins, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Charleston, South Carolina, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

After a representative of American Honda Motor Co., Inc. stated to Tom Hughes Marine, Inc., a boat sales and service business in West Columbia, South Carolina, that Tom Hughes Marine would enjoy an exclusive territory for the distribution of Honda-brand outboard motors in the Columbia area if it agreed to become a Honda dealer, Tom Hughes Marine entered into an integrated, written "Dealer Sales Agreement" with Honda. But this agreement, which was terminable at will by either party, included no promise of exclusivity. When American Honda Motor Co. licensed another dealership approximately four years later and 20 miles from Tom Hughes Marine, Tom Hughes Marine brought this action, alleging, in two counts, that Honda made fraudulent and negligent misrepresentations in promising Tom Hughes Marine an exclusive territory. The district court granted the motion of American Honda Motor Co. for summary judgment, and we affirm because the dealership can point to no representation by American Honda Motor Co. that constituted a demonstrably false statement of existing or preexisting fact and because redress for injuries stemming from broken promises properly resides in the realm of contract law, not tort.

I

For 16 years before American Honda Motor Co. approached Tom Hughes Marine, Tom Hughes and his wife, Alice Hughes, operated a boat sales and repair business in West Columbia, South Carolina, through the corporation, Tom Hughes Marine, Inc. Tom Hughes is the president and sole shareholder of Tom Hughes Marine. In 1993, Rob-

2

ert L. Wells, a district sales manager for American Honda Motor Co. ("Honda"), approached Tom Hughes for the purpose of establishing a Honda-brand outboard motor dealership in the Columbia, South Carolina area. Honda did not have a significant market for its marine outboard motors in the Columbia area, and it had no dealer there. Tom Hughes recognized that if Tom Hughes Marine agreed to become a Honda dealer, the dealership would have to commit financial resources and hard work toward the promotion of Honda and its products to build a market for Honda's outboard motors.

During negotiations with Wells for the dealership, Tom Hughes came to understand that Honda would give Tom Hughes Marine an exclusive geographic territory for an indefinite period for the sale and service of Honda-brand outboard motors. In his affidavit, Hughes stated:

> In the negotiations, I was promised by Mr. Wells that if I would become a Honda dealer, I would have a protected, exclusive territory. I agreed to become a Honda dealer on those terms.

* * *

> The exclusive territory was specifically described by Mr. Wells as to its limits. I signed the dealer agreement relying on his promise and would not have signed it and would not have accepted the Honda dealership without an exclusive territory . . . .

In his deposition, Hughes articulated the full scope of his discussions with Wells:

> I asked how much protection that I was going to have.

* * *

> Mr. Wells gave me four specifics as far as territory. One was that he was going to put a dealer in Florence. One was that he was going to put a dealer in Augusta . . . . He would

3

not go to Orangeburg. And the other gesture was Lake Greenwood, he was going to have a franchise for the Greenwood area.

Hughes testified that this description of his discussion with Wells exhausted his recollection of what Wells promised:"[T]his is all I recollect." While no additional detail or terms about exclusivity were discussed, Hughes did explain in further testimony his understanding that the exclusive territory would be granted for an indefinite period -- "until the end of time" -- so long as Tom Hughes Marine "continue[d] to service [Honda's] needs [and] meet [Honda's] market needs." Alice Hughes confirmed the substance of the negotiations involving exclusive territory, although her testimony was less specific.

Following the discussions with Wells, Tom Hughes Marine and Honda signed a written "Dealer Sales Agreement" on November 16, 1993, under which Tom Hughes Marine agreed to sell and service Honda-brand outboard motors. The agreement, however, included no provision granting Tom Hughes Marine an exclusive territory, and it was silent regarding any plans by Honda to enter into other dealership agreements with businesses in the greater Columbia area. Moreover, the agreement included a merger clause stating:

> It is declared by both parties hereto that there are no other oral or written or any agreement [sic] or understandings between them affecting this Agreement or relating to the sale or servicing of Honda Marine Products or parts therefore, and this Agreement supersedes and cancels all previous or other agreements or understandings between the parties hereto.

In addition, the agreement provided that it could not "be modified, amended or altered unless such modification, amendment or alteration [was] in writing and signed by both parties." Finally, the agreement was terminable at will on 30 days' notice by either party.[1]

_____

[1] The Dealer Sales Agreement also granted Tom Hughes Marine a "non-exclusive right and license to use [Honda's] Trademarks," a provision that, Honda argues, supports its claim that Tom Hughes Marine could not have been granted an exclusive territory. We agree with Tom Hughes Marine, however, that the nonexclusive trademark license does not speak to the issue of territorial exclusivity and is irrelevant to this case.

4

In 1997, several years after the parties signed the Dealer Sales Agreement, Tom Hughes learned that Honda planned to license another dealer in the Columbia area, approximately 20 miles from Tom Hughes Marine. Tom Hughes protested to Wells that this action was inconsistent with Honda's promise that his dealership would enjoy an exclusive territory as long as it met Honda's sales quotas, which it had. According to Hughes, Wells agreed, stating, "You are right. It is not going to happen."

When Honda nevertheless proceeded later that year to license a new dealer in the Columbia area, Tom Hughes Marine brought this action, based on diversity jurisdiction, alleging fraudulent and negligent misrepresentation. In granting Honda's motion for summary judgment, the district court concluded that the Dealer Sales Agreement precluded Tom Hughes Marine from relying on precontract representations because they were merged into the contract; that a claim of exclusivity was inconsistent with the agreement's nonexclusive grant to Tom Hughes Marine to use Honda's trademarks; that Tom Hughes Marine's claim of exclusive territory was too indefinite; and that Tom Hughes was not entitled to rely on any misrepresentation:

> Hughes is a sophisticated businessman who has been very successful in developing his business. Thus, Hughes's conduct, in failing to read (or thoroughly read) [the contract] is reckless, and he is unable to establish that he had a right to rely on Honda's representation or that he justifiably relied upon it.

This appeal followed.

II

At the outset, it is important to note that, despite Tom Hughes Marine's allegations that Honda's representative made -- and Honda failed to keep -- express promises of an exclusive territory, Tom Hughes Marine does not assert a cause of action for breach of contract. This was surely a deliberate decision made in recognition of the Dealer Sales Agreement's clause merging all antecedent promises into the written agreement. That agreement disavows any previously

5

existing agreements between the parties and precludes the parties from orally modifying or adding to its terms.

Tom Hughes Marine has instead brought two claims in tort, alleging that Honda made fraudulent and negligent misrepresentations. In its complaint, Tom Hughes Marine characterized Wells' promises of exclusivity as "misrepresentations" that were made fraudulently or, in the alternative, negligently. But however Tom Hughes Marine's complaint characterizes Wells' statements, they are what they are, and the complaint's characterizations cannot change the objective nature of the statements. If these precontract statements amounted to promises, they were merged into the integrated written Dealer Sales Agreement, and Tom Hughes Marine's only claim would be for breach of contract. As the Supreme Court of South Carolina has recognized, a mere showing that a party has failed to keep his promises "is not sufficient to demonstrate actionable fraud." Woodward v. Todd, 240 S.E.2d 641, 643 (S.C. 1978). Rather, a party's recourse for unkept promises is confined to an action in contract, which "may entitle [the party] to relief . . . if it is determined the promises were actually made." Id. On the other hand, if Wells' statements were misrepresentations of fact, then they would have to be considered against the requirements for proving fraudulent and negligent misrepresentation under South Carolina law.[2] The viability of Tom Hughes Marine's action therefore turns on the legal nature of Wells' precontract statements.

_____

[2] Under South Carolina law, in order to recover in an action for fraudulent misrepresentation, a party must establish the following elements: "(1) a representation; (2) [its] falsity; (3) its materiality; (4) knowledge of the falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon the truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." West v. Gladney, 2000 WL 576188, at *3, ___ S.E.2d ___, ___ (S.C. May 8, 2000). And to recover on a claim for negligent misrepresentation, a party must prove that: "(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation." Id.

6

"The general rule is that [torts based on misrepresentation] must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." Woodward, 240 S.E.2d at 643 (applying rule to fraudulent misrepresentation) (quoting Davis v. Upton, 157 S.E.2d 567, 568 (S.C. 1967)); Koontz v. Thomas, 511 S.E.2d 407, 413 (S.C. App. 1999) (applying rule to negligent misrepresentation). An exception to this rule exists only when a person makes a promise "having at the time no intention of keeping his agreement." Woodward, 240 S.E.2d at 643 (quoting Davis, 157 S.E.2d at 568); see also Thomas & Howard Co. v. Fowler, 82 S.E.2d 454, 456 (S.C. 1954); cf. Longman v. Food Lion, Inc., 197 F.3d 675, 683 (4th Cir. 1999) (noting that, in securities fraud context, opinions of company executives "could be false and factual if the directors did not believe what they said they believed and proof could be had `through the orthodox evidentiary process'" (quoting Virginia BankShares, Inc. v. Sandberg, 501 U.S. 1083, 1093 (1991)).

This distinction between a promise and a misrepresentation of fact is not merely a technicality of labeling, but reaches to the fundamental difference between tort and contract. While tort law prescribes duties governing one's conduct vis-a-vis the general public, contract law enforces bargained-for obligations to a particular party. Tort duties are imposed upon parties "by the law itself, without regard to their consent to assume them," whereas "one need not enter into the obligation of a contract with another save by one's own free will." W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 1, at 4 (5th ed. 1984). Tort law thus orders general societal conduct to protect against invasions of its members' interests, while contract law facilitates the right of societal members to arrange their own relationships and enforce them in accordance with their agreements. See Strum v. Exxon Co., 15 F.3d 327, 330 (4th Cir. 1994); Restatement (Second) of Torts § 4 cmt. c (1965).

In the context of torts involving misrepresentation, proof of liability focuses on the truthfulness of a purported statement of fact, looking backward from the time the representation was made to determine the truth vel non of the fact represented. Through these torts, society imposes a duty on its members not to make false statements of fact and thereby induce others' reliance on the falsehood. In contrast, in a breach of contract claim, the inquiry looks forward from the time

7

the promise was made to determine whether conduct comported with the promise.

Considering these principles distinguishing contract and tort, we turn to the statements made in this case by Honda's representative, examining them to determine whether they were promises, the breach of which would give rise to a breach-of-contract claim, or misrepresentations of existing or preexisting fact, which give rise to tort claims. Reviewing the statements allegedly made by Wells and imputed to Honda, it becomes apparent that each was forward-looking, indicating what Honda would do in the future. During the negotiations leading up to the formation of the Dealer Sales Agreement, Wells purportedly told Tom Hughes that he would enjoy an exclusive territory if he agreed to sell and service Honda products. Wells described the territory in terms of locations where Honda would and would not license future dealerships. Later on, Wells allegedly assured Tom Hughes that his dealership would continue to enjoy an exclusive territory if it met Honda's sales quotas. These statements, when made, all concerned future events and all amounted to nothing more than promises.

Under South Carolina law, these promises cannot form the basis of an action for fraudulent or negligent misrepresentation, unless, as we have noted, Honda had no intention of doing what it promised at the time the promises were made. See Woodward, 240 S.E.2d at 643; Davis, 157 S.E.2d at 568; Thomas & Howard , 82 S.E.2d at 456. While Tom Hughes Marine does allege such a fraudulent intent, claiming that the statements of Honda's representative concerning an exclusive territory were "false at the time they were made" and that they "were made with the intent, design and purpose of deceiving [Tom Hughes Marine]," Tom Hughes Marine has offered no proof supporting these allegations. And Tom Hughes conceded as much in his deposition when he stated that he had no information regarding the intentions of Honda's representative at the time he promised an exclusive territory:

> Q. "Do you think, looking back on it now, Mr. Wells intended to promise you an exclusive geographical area like that, Augusta to Greenwood to Florence, nothing in Orangeburg?

8

A. "Sir, I don't know what his intentions are, only that was the statement that was made and I trusted that statement.

Moreover, Honda asserts that in fact "[n]o other dealer selling American Honda's marine products was planned at that time for the Columbia, South Carolina area," a fact the evidence supports, because for almost four years, Honda licensed no other dealers in the Columbia area.

In sum, while Tom Hughes Marine has offered evidence of broken promises, it has presented no proof that Honda or its representatives made demonstrably false statements of fact. In the absence of any evidence that Honda made promises while contemporaneously harboring an intention to dishonor them, Tom Hughes Marine's claims grounded in tort must fail. See Woodward, 240 S.E.2d at 643; Davis, 157 S.E.2d at 568; Thomas & Howard, 82 S.E.2d at 456.

In addition to its tort claims based on promises made during the negotiations leading up to the Dealer Sales Agreement, Tom Hughes Marine asserts that Honda's approvals of advertising in which Tom Hughes Marine represented that it was the area's"exclusive Honda dealer" amounted to fraudulent or negligent misrepresentations. Even assuming, arguendo, that by approving Tom Hughes Marine's advertisements, Honda adopted or ratified the statements contained in them, such statements could not form the basis of an action for fraud or misrepresentation because they were true when made. See, e.g., West v. Gladney, 2000 WL 576188, at *4, ___ S.E.2d ___, ___ (S.C. May 8, 2000) (falsity of representation is an essential element of claims for fraud and negligent misrepresentation). Until 1997, when Honda licensed a second dealership in the Columbia area, Tom Hughes Marine was the area's exclusive Honda dealer. And because Tom Hughes Marine was aware that Honda licensed a second dealership in Columbia in 1997, it could not have relied on any statements that Honda might have made after that time. See id. ("[T]here can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter") (quoting Harrington v. Mikell, 469 S.E.2d 627, 629 (S.C. App. 1996)).

Accordingly, we affirm the judgment of the district court.

AFFIRMED

9