GSM DEALER SERVICES, INCORPORATED; Forrest Chrysler Plymouth Dodge, Incorporated, Plaintiffs–Appellees,

v.

**CHRYSLER CORPORATION,**
Defendant–Appellant.

No. 93–2383.

United States Court of Appeals,
Fourth Circuit.

Argued July 13, 1994.

Decided Aug. 18, 1994.

required no proof of an agreement by conspirators, the existence of any not being relevant. The attempt to distribute (Count 2) concerned different drugs on a different day than Count 3.

**ARGUED:** Mark Frank Kennedy, Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, CO, for appellant. Hubert Michael Spivey, Mauldin, SC, for appellees. **ON BRIEF:** Christopher J. Meyer, Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, CO, Russell T. Burke, Nexsen, Pruet, Jacobs & Pollard, Columbia, SC, for appellant. James H. Cassidy, Love, Thornton, Arnold & Thomason, P.A., Greenville, SC, for appellees.

Before NIEMEYER and MICHAEL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Reversed and remanded by published opinion. Senior Judge CHAPMAN wrote the opinion, in which Judge NIEMEYER and Judge MICHAEL joined.

## OPINION

CHAPMAN, Senior Circuit Judge:

GSM Dealer Services, Inc. ("GSM") and its wholly owned subsidiary, Forrest Chrysler Plymouth Dodge, Inc. ("Forrest CPD") brought this diversity action against Chrysler Corporation ("Chrysler") when an agreement to sell Forrest CPD fell through after the buyers could not secure the necessary floorplan financing. The plaintiffs alleged that Chrysler had negligently misrepresented that such financing had been approved by Chrysler Credit Corporation ("Chrysler Credit") for the purchasers. This led to the termination of the Forrest CPD franchise with Chrysler, because it was assumed the purchasers would become a Chrysler franchisee. At trial, Chrysler moved for judgment as a matter of law upon the ground that the plaintiffs had not made out a case of negligent misrepresentation under South Carolina law. The court denied said motion, and the jury returned a verdict for GSM and Forrest CPD in the amount of $120,000.

Chrysler presents two issues on appeal: whether the district court erred in allowing the claim to go to the jury, and whether the court erred in allowing the jury to consider evidence reflecting the "benefit of the bargain" damages. We hold that GSM and Forrest CPD failed to establish a legally sufficient evidentiary basis for its negligent misrepresentation claim, and therefore reverse

the district court's denial of Chrysler's motions for judgment as a matter of law.

## I.

Dallah Forrest was the majority shareholder and president of GSM. His son, Andy Forrest, owned 25% of GSM and Edward Rich, the secretary—treasurer of GSM, owned the remaining 25% interest in GSM. On December 1, 1988, GSM entered into an agreement to sell the Forrest CPD dealership, located in Mullins, South Carolina, to two long-time employees, Richard Rotunda and John Harmon. In July 1989, while they operated Forrest CPD, Rotunda and Harmon applied to Chrysler for a franchise under the name Carolina Chrysler Plymouth Dodge ("Carolina"). Before awarding a franchise, Chrysler requires approval of the dealer candidate's financing plan, so, Rotunda and Harmon applied for floorplan financing with Chrysler Credit, a corporation owned by Chrysler.[1] Floorplan financing is a lending arrangement between a motor vehicle dealer and a financial institution under which the financial institution agrees to pay a manufacturer for vehicles ordered by and delivered to the dealer. During the summer of 1989, Bob Alexander, a representative of Chrysler Credit in Columbia, South Carolina, told Forrest CPD that Rotunda and Harmon's credit application would be approved. In October 1989, Alexander advised Forrest CPD, Rotunda, and Robert Cowden, a Chrysler representative, that Chrysler Credit had approved floorplan financing for Carolina. After receiving this information from Alexander, Cowden sent a transmittal letter, dated November 15, 1989, to Chrysler's headquarters in Detroit explaining that a letter of credit had been approved by the Columbia, S.C. branch of Chrysler Credit. On December 11, 1989, based on Chrysler Credit's supposed approval, Chrysler awarded Carolina

the franchise it sought, and simultaneously terminated the Forrest CPD franchise. Termination of the Forrest CPD franchise was confirmed by letter dated January 3, 1990. When Forrest CPD ceased to be a Chrysler dealer, its floor plan financing with South Carolina National Bank was terminated.

During an audit of the new dealership in January 1990, Chrysler Credit discovered some financial problems and refused to approve the credit application. Chrysler Credit requested an audited financial statement from Rotunda and Harmon but this request was denied. Harmon, Rotunda and representatives from Forrest CPD then met with Chrysler Credit in an effort to rectify the problems, but these efforts failed and in June 1990, Chrysler Credit rejected Harmon and Rotunda's credit application. In July 1990, Carolina reneged on its obligation to purchase Forrest CPD, and it ceased operation of the dealership August 31, 1990.

GSM and Forrest CPD brought this action against Chrysler alleging that Chrysler had negligently misrepresented the status of the application for floorplan financing. Forrest alleged losses from the sale of its inventory of $93,273, a loss of rent of $26,050, a loss on the value of its building of $65,000, and a loss from the "noncompete" clause in the contract of $120,000.[2]

Three witnesses testified at trial that it was their understanding that Chrysler Credit had approved the floor financing plan for Carolina in October 1989. Two of those witnesses, Rotunda and Chrysler's Robert Cowden, spoke directly with Alexander, the Chrysler Credit representative. Andy Forrest also testified that it was his understanding from Robert Cowden that Chrysler Credit had approved the credit application. All three of these conversations were transmitted by telephone and there is no official documentation of the approval in the record.

---

1. At the time of this application, Rotunda and Harmon were using South Carolina National Bank for floorplan financing.

2. The buy/sell agreement reached between Forrest and Harmon/Rotunda provided:
   On Monday, December 12, 1988, Seller and Purchaser will immediately count the inventory of new automobiles purchased from the Chrysler Factory Sale, Parts, Tools and Equip-

ment, referred to in the BUY AND SELL AGREEMENT. The difference between the cost incurred by Seller of such inventoried items and the amount of one hundred and sixty thousand dollars ($160,000) will be the purchase price of a NON–COMPETE COVENANT to be executed on the Closing Date.
J.A. 465.

Although Dallah Forrest denied that he had a direct discussion with Chrysler Credit, a letter from Dallah Forrest's attorney to Chrysler Credit, which was admitted into evidence without objection, stated, "[m]ly client [Dallah Forrest] was told by Bob Alexander of your office that Mr. Harmon was approved and nothing was said about an audit being required." At the close of the plaintiff's evidence, Chrysler moved for judgment under FRCP 50(a), which the court took under advisement. The motion was upon the ground that there was no evidence that Chrysler Credit had not approved the floorplan application at the time Chrysler repeated that information, and the only evidence established that Chrysler Credit had approved the floorplan financing application and later withdrew such approval after a requested audited financial statement was not provided. Chrysler did not present evidence and moved again for judgment as a matter of law, which the court denied. The jury returned a verdict for GSM and Forrest CPD in the amount of $120,000. Chrysler renewed its motion for judgment as a matter of law, which was denied.

## II.

■ We turn first to Chrysler's contention that the district court wrongly denied its motion for judgment as a matter of law. This court reviews *de novo* a district court's denial of a motion for judgment as a matter of law. *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir.1994). A district court may grant a motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . . ." Fed.R.Civ.P. 50(a). To grant the motion the district court must examine the evidence in the light most favorable to the non-moving party and determine "whether a reasonable trier of fact could draw only one conclusion from the evidence." *Townley v. Norfolk & W. Ry.*, 887 F.2d 498, 499 (4th Cir.1989). On review, this court is not to weigh the evidence nor judge the credibility of the witnesses. *Trimed, Inc. v. Sherwood Medical Co.*, 977 F.2d 885, 888 (4th Cir.1992).

■ This being a diversity action, the law of the forum state applies. Under South Carolina law, the plaintiff must prove the following elements to be successful under a theory of negligent misrepresentation: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation. *AMA Management Corp. v. Strasburger*, 309 S.C. 213, 420 S.E.2d 868, 874 (Ct.App.1992). An integral component of the false representation element is that the representation be "false at the time it was made." *Id.* 420 S.E.2d at 875; *Winburn v. Insurance Co. of N. Am.*, 287 S.C. 435, 339 S.E.2d 142, 147 (Ct.App. 1985).

■ Chrysler argues that Cowden's statement to Andy Forrest that Rotunda and Harmon had been approved by Chrysler Credit was not false because at the time it was made Chrysler Credit had approved the floor financing plan for Carolina. Chrysler offers the testimony of Rotunda and Cowden in support of its argument that Chrysler Credit, through Bob Alexander, notified the interested persons in October 1989 that the floor financing plan had been approved.

GSM and Forrest CPD maintain that sufficient evidence was introduced which proved that the representation was false when made. They rely entirely on the lack of documented approval and Chrysler Credit's rejection of the credit application in June 1990 as proof that Chrysler misrepresented the facts.

Reviewing the evidence in the light most favorable to GSM and Forrest CPD, we find no proof of the negligent misrepresentation and this claim fails as a matter of law. Under South Carolina law, the plaintiffs had the burden of proving that Chrysler's representation was false at the time it was made. GSM and Forrest CPD produced no one from Chrysler Credit to confirm that the application had not been approved as of October 1989. Although Forrest offers a lack of

any formal approval as proof of a misrepresentation, this alone was not sufficient to establish the falsity of the statement at the time it was made. Furthermore, evidence was elicited by Chrysler through cross examination that Bob Alexander had informed several persons of the approval of the credit application. Admissions on interrogatories and the letter from Dallah Forrest's attorney confirmed that Forrest CPD was directly informed by Alexander that the application had been approved. Thus, not only did GSM and Forrest CPD fail to prove that the statement was false when made, the evidence demonstrates that Chrysler only conveyed information that Forrest CPD had previously received from Alexander. Therefore, plaintiffs learned nothing from Chrysler that they had not already heard from Alexander of Chrysler Credit. Both plaintiffs and defendants received their information from the same source and there could be no misrepresentation under these facts.

## III.

We conclude that GSM and Forrest CPD failed to present evidence sufficient to support a negligent misrepresentation claim. We reverse the district court's denial of Chrysler's motions for judgment as a matter of law and remand to the district court with instructions to enter judgment for Chrysler. With this conclusion, it is unnecessary to address Chrysler's second argument pertaining to damages.

*REVERSED AND REMANDED.*