**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

**No. 12-2063**

————————

LEVERT SMITH and NELSON D. RADFORD, Co-Administrators of
the Estate of JOSEPH JERMAINE PORTER,

             Plaintiffs - Appellants,

      and

LATOYA HACKETT; BETTY JO RADFORD,

             Plaintiffs,

      v.

RONALD LUSK, individually,

             Defendant – Appellee,

      and

THE CITY OF HUNTINGTON, WEST VIRGINIA,

             Defendant.

————————

Appeal from the United States District Court for the Southern
District of West Virginia, at Huntington.  Robert C. Chambers,
Chief District Judge.  (3:10-cv-00781)

————————

Argued:  May 16, 2013                    Decided:  July 18, 2013

————————

Before DUNCAN and KEENAN, Circuit Judges, and David C. NORTON,
United States District Judge for the District of South Carolina,
sitting by designation.

————————

Affirmed by unpublished opinion.   Judge Keenan wrote the opinion, in which Judge Duncan and Judge Norton joined.

_____

**ARGUED:** Patrick Stanley Cassidy, CASSIDY, MYERS, COGAN & VOEGELIN, LC, Wheeling, West Virginia, for Appellants.  Charles K. Gould, JENKINS FENSTERMAKER, PLLC, Huntington, West Virginia, for Appellee.  **ON BRIEF:** Timothy F. Cogan, CASSIDY, MYERS, COGAN & VOEGELIN, LC, Wheeling, West Virginia, for Appellants. Nathanial A. Kuratomi, JENKINS FENSTERMAKER, PLLC, Huntington, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

This case is based on a shooting incident that occurred after officers from the City of Huntington, West Virginia, Police Department responded to a report of multiple gunshots fired in a nightclub.  Officer Ronald Lusk and other officers entered the club where Lusk ultimately shot and killed a club patron, Joseph J. Porter.  The co-administrators of Porter's Estate (the plaintiffs) filed suit against Lusk and the City of Huntington (the City) asserting claims under 42 U.S.C. § 1983 and claims of reckless conduct and simple negligence.[1]

In a jury trial, at the close of evidence, the district court concluded that the plaintiffs' simple negligence claim was not supported by the evidence and entered judgment as a matter of law in favor of Lusk and the City on that claim.  The jury returned a verdict in favor of Lusk on the remaining claims.

On appeal, the plaintiffs challenge the district court's entry of judgment as a matter of law on the simple negligence claim.  The plaintiffs also argue that the district court erred in giving a certain jury instruction relating to the § 1983

---

[1] In asserting that the City was liable for the officers' negligent acts, the plaintiffs rely on West Virginia Code § 29-12-A-4, which provides, in relevant part, that employers may be liable for the negligent conduct of their employees performed within the scope of their employment.

claim.    Upon    our    review,    we    affirm    the    district    court's judgment.

I.

The shooting incident occurred in November 2009 in the City of Huntington.  The evidence showed that one morning around 3:00 a.m., a City police officer, who was less than one block from Club Babylon (the club), heard gunshots coming from the direction of the club.  The officer reported the incident over the police radio, and numerous City police officers responded to the scene.

When Sergeant Charles Kingery arrived at the club, he and other officers observed club patrons running in the street and hiding behind parked vehicles.  Several officers also saw shell casings on the ground in front of the club.[2]

As Sergeant Kingery approached the club's front entrance, he observed "a flash coming from the doorway."  Within seconds, Officer Lusk, Officer Joshua Nield, and another officer followed Sergeant Kingery into the club in a single-file formation with their guns drawn.  As they entered, the officers saw between 30 and 40 patrons remaining in the club.  The officers described

_____

[2] Police officers ultimately determined that three people had been shot near the front entrance of the club.

4

the scene as chaotic, and considered the location an "active shooting scene."

One of the officers testified that as he entered, he heard someone say, "[t]hey've got guns and they're going towards the back." Another officer observed a patron pointing in that direction. After the officers observed two men moving quickly toward the club's rear exit, the officers identified themselves as police and repeatedly ordered the two men to stop.

One of the men, Lamont Miller, eventually stopped, turned, and placed his hands in the air. Sergeant Kingery approached Miller to restrain him. When the other man, Porter, continued moving toward the rear of the club despite the officers' commands to stop, Officer Lusk pursued Porter.

Officer Lusk testified that as he approached Porter from behind, he "grabbed" Porter's left arm and "spun" Porter around. At that time, the two men were standing a few feet apart. As Porter turned toward Lusk, Lusk observed a silver gun in Porter's right hand being pointed at Lusk. Lusk stated that he "pushed off," stepped to his left, raised his weapon, and fired one shot that struck Porter in his right arm. The bullet passed through Porter's arm and lodged in his spine, ultimately killing him.

Officers Kingery, Lusk, and Nield all testified that they observed a gun lying on the ground near the right side of

5

Porter's body. Officer Nield placed the gun in the trunk of his police vehicle.

The plaintiffs presented evidence to support their contention that Porter did not have a gun on his person when Lusk shot him. Two club patrons who witnessed the shooting from between eight and twelve feet away testified concerning their observations. One of the witnesses testified that Porter was holding a glass, not a gun, while the other witness stated that Porter was not holding any object in his hands. The plaintiffs also presented evidence showing that there was no fingerprint or other physical evidence linking Porter to the gun recovered by the officers.

At the close of the evidence, the district court entered judgment as a matter of law in favor of Lusk and the City on the simple negligence claim. The jury considered only the remaining issues whether Lusk violated Porter's constitutional right to be free from the use of excessive force, and whether Lusk acted willfully, wantonly, or recklessly in causing Porter's death.[3]

---

[3] The plaintiffs also initially asserted a claim under § 1983 based on the City police officers' alleged "custom of condoning" excessive force and on the City's alleged failure to properly train, hire, and supervise its employees. Before trial, however, the district court granted the defendants' motion for summary judgment on these claims. The plaintiffs also had asserted that the officers were negligent in failing to render medical aid to Porter after he was shot. However, the defendants moved for entry of judgment as a matter of law on (Continued)

The jury decided both issues in favor of Lusk. The plaintiffs timely filed this appeal.

## II.

The plaintiffs argue that the district court erred in entering judgment as a matter of law on their simple negligence claim. They also contend that the district court erred in denying their motion for a new trial based on an allegedly improper jury instruction relating to the § 1983 claim. We address these arguments in turn.

## A.

We first consider the plaintiffs' arguments relating to their simple negligence claim. We review de novo a district court's ruling on a motion for judgment as a matter of law. GSM Dealer Servs. v. Chrysler Corp., 32 F.3d 139, 142 (4th Cir. 1994). In engaging in this review, we consider the evidence in the light most favorable to the plaintiffs, drawing all reasonable inferences in their favor without weighing the evidence or assessing the witnesses' credibility. See Anderson v. G.D.C., Inc., 281 F.3d 452, 457 (4th Cir. 2002). Judgment as a matter of law is warranted only when the evidence has failed

_____

that claim, which the district court granted. The plaintiffs do not challenge either of these rulings on appeal.

7

to provide a legally sufficient basis on which a jury could reach a verdict in favor of the non-moving party. Fed. R. Civ. P. 50(a).

At the close of the evidence, the district court determined that the evidence was insufficient to support a claim of simple negligence. The court stated:

> Lusk testified that he intentionally shot Joe Porter, fearing Porter was about to shoot him. Plaintiffs presented no evidence that Lusk's decision to shoot was accidental, or careless, rather than intentional. Additionally, Plaintiffs failed to present sufficient evidence for a jury to conclude that Lusk was negligent in his actions before or after the shooting incident.

On appeal, the plaintiffs challenge this ruling and advance several theories of simple negligence that they contend were supported by the evidence. We initially address the plaintiffs' argument that the jury could have determined that Lusk negligently, rather than intentionally, shot Porter. The plaintiffs assert that the jury could have determined that Lusk accidentally or mistakenly shot Porter based on Lusk's ambiguous testimony. The plaintiffs rely on the portions of Lusk's testimony in which he agreed that his "gun went off," and stated that he "discharged" his weapon. The plaintiffs also argue that because Lusk stated that he was not aiming his weapon and that the weapon was close to his chest when he fired, a jury could

determine that Lusk did not intentionally fire his weapon at Porter. We disagree with the plaintiffs' arguments.

At the outset, we observe that the district court correctly determined that the plaintiffs could not prevail on a claim of simple negligence based on Lusk's intentional act. See Stone v. Rudolph, 32 S.E.2d 742, 748 (W. Va. 1944) (intentional acts are not encompassed by general negligence principles). After reviewing the record, we hold that the evidence unequivocally demonstrated that Lusk intentionally shot Porter in response to the perceived threat that Porter posed.

The plaintiffs' reliance on isolated words and phrases used by Lusk mischaracterizes his testimony. Lusk described his encounter with Porter, which lasted only seconds, and explained the manner in which Lusk fired his weapon. Lusk stated that his gun was "still close to [his] chest, not even really aiming, just straight out," and that he "pulled the trigger one time." Lusk later clarified that he was shooting at the "right side of [Porter's] body." Although Lusk did not immediately know that his gunshot had struck Porter, Lusk stated that he thought that Porter might have been struck. We can find no basis in this record to support the plaintiffs' claim that Lusk accidentally or mistakenly shot Porter.

Our conclusion is not altered by the plaintiffs' reliance on our decision in Henry v. Purnell, 652 F.3d 524 (4th Cir.

9

2011).  In that case, we held that an officer who accidentally employed his firearm instead of his taser was not shielded by qualified immunity from the plaintiff's § 1983 excessive force claim.  Id. at 534.  We explained that the plaintiff could put forth evidence that a reasonable officer would have realized that he was holding a firearm, and that it was unlawful to use that firearm to shoot an individual who was not posing a threat. Id.  Because this discussion in Henry related to the plaintiffs' § 1983 excessive force claim, that analysis has no bearing on the different issue of simple negligence presented here.[4]

We therefore hold that the district court did not err in determining that the evidence of simple negligence was insufficient to permit a jury verdict in favor of the plaintiffs based on Lusk's act of shooting Porter.[5]  Thus, we turn to

---

[4] We also observe that in Henry, we determined that the district court erred in granting summary judgment on the gross negligence claim, because a jury could conclude that Purnell was grossly negligent "in failing to make even a minimal effort to verify that he had drawn his Taser."  652 F.3d at 536.  However, that holding likewise has no impact on whether the evidence presented to the jury in the present case was sufficient to form the basis of a simple negligence claim.  Furthermore, the jury in the present case was instructed on the plaintiffs' claim of gross misconduct and found in favor of Lusk on that claim.

[5] To the extent that the plaintiffs advance other arguments relating to their theory that Lusk negligently shot Porter, we decline to consider those arguments, which were raised for the first time on appeal.  See Helton v. AT&T, Inc., 709 F.3d 343, 360 (4th Cir. 2013).

consider the plaintiffs' arguments that Lusk and the other officers engaged in negligent conduct before and after the shooting occurred.

The plaintiffs contend that Lusk acted negligently before the shooting by failing to use "due care in assessing" whether Porter presented a threat, and by "rush[ing] to judgment." With regard to the officers' conduct after the shooting, the plaintiffs contend that the officers acted negligently by allegedly fabricating evidence that a gun was found near Porter's body and by failing to properly secure the gun. We disagree with the plaintiffs' arguments.

A plaintiff asserting a claim of negligence bears the burden of establishing a prima facie case. See Jack v. Fritts, 457 S.E.2d 431, 434-35 (W. Va. 1995) (citing Parsley v. Gen. Motors Acceptance Corp., 280 S.E.2d 703 (W. Va. 1981)). To prove a prima facie case of negligence, a plaintiff must establish that the defendant owed the plaintiff a duty, breached that duty by acting or failing to act and, as a result, caused injury to the plaintiff. Bland v. State, 737 S.E.2d 291, 302 (W. Va. 2012). While there is a general duty of reasonable conduct that all individuals owe to others, to support a "valid cause of action" for negligence, a plaintiff must demonstrate the particular duty owed by a defendant and the breach of that

11

duty in the context of the given circumstances. Robertson v. LeMaster, 301 S.E.2d 563, 567-68 (W. Va. 1983).

Here, the plaintiffs failed to present evidence establishing that the officers owed any duty to the club's patrons or breached any such duty based on the officers' conduct before the shooting. In fact, the only discussion of the applicable standard of care presented by the plaintiffs related to the duty of care owed by an officer in employing deadly force against a suspect. That evidence, however, did not address in any manner a standard of care or duty owed by the officers in their conduct preceding the shooting.

It is difficult to discern from the plaintiffs' argument the precise conduct on which they rely in asserting that the officers acted negligently in the moments before Lusk shot Porter. The plaintiffs' bare contention that Lusk was mistaken in his perception that Porter held a gun does not establish a claim of negligence. Instead, the plaintiffs were required to demonstrate the duty that the officers owed to Porter in assessing whether Porter was a threat, and the manner in which Lusk's assessment of the situation, made in a matter of seconds, breached that duty. See id.

In contrast to the plaintiffs' lack of evidence regarding the applicable standard of care, Lusk and the City presented extensive testimony on this issue. Thomas Streed, who offered

12

expert testimony on the subject of police procedures, stated that police officers are trained to pursue and detain an individual who appears to be fleeing an area in which shots have been fired. Streed opined that the officers' entry into the club in a "column" formation, and other actions by the officers both before and after the shooting, were appropriate responses under the circumstances. Notably, the plaintiffs did not challenge Streed's testimony and did not cross-examine him. We therefore conclude that the plaintiffs failed to present a prima facie case of negligence based on the officers' conduct before Porter was shot.

With regard to the officers' actions after the shooting, the plaintiffs do not point to any particular conduct by the officers that bore a causal relationship to Porter's death, the only injury asserted by the plaintiffs. Any potentially improper conduct by the officers with respect to their securing the gun or to handling the evidence cannot form a basis for negligence in this case when there is no related injury alleged. See Neely v. Belk, Inc., 668 S.E.2d 189, 197 (W. Va. 2008) (a plaintiff must show that defendant's action or failure to act caused injury to the plaintiff).

For these reasons, we conclude that the district court correctly determined that the evidence was insufficient for a jury to find that Lusk negligently shot Porter, or that the

13

officers' conduct before or after the shooting incident was negligent. We therefore hold that the district court did not err in granting judgment as a matter of law on the plaintiffs' simple negligence claim.

B.

We next consider the plaintiffs' argument that the district court erred in denying their motion for a new trial based on an erroneous jury instruction relating to the § 1983 claim. We review for an abuse of discretion the district court's decision to deny a motion for a new trial. Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 500 (4th Cir. 2001); see Fed. R. Civ. P. 59(a). In considering whether a district court properly instructed the jury, we conduct a de novo review. United States v. Jefferson, 674 F.3d 332, 351 (4th Cir. 2012).

The plaintiffs' argument focuses on the district court's jury instruction concerning the § 1983 excessive force claim. That instruction provided:

> An actor's use of deadly force is objectively reasonable if he has probable cause to believe that a person poses an imminent danger of harm to himself or others, even if the officer is mistaken in the belief that the person is armed or otherwise mistaken as to the nature of the danger. Even if Officer Lusk was mistaken as to whether Joseph Porter posed an imminent risk, an officer's mistaken belief about the attendant circumstances does not make the use of deadly force unreasonable per se or automatic. If Officer Lusk reasonably believed that Joseph Porter presented an immediate threat of serious physical harm, Officer

14

Lusk could reasonably use deadly force to protect himself or others.

The plaintiffs assert: (1) that this instruction contained an incorrect statement of law; and (2) that if the evidence was insufficient to support a claim for negligence, the evidence likewise was insufficient to support this instruction, because it permitted the jury to consider whether Lusk mistakenly thought that Porter held a gun at the time Lusk shot him. We disagree with the plaintiffs' arguments.

Contrary to the plaintiffs' contention, the challenged jury instruction provides a correct statement of law in the context of a § 1983 excessive force claim. We have explained that a "mistaken use of deadly force" is not necessarily a constitutional violation when such force is based on a "mistaken understanding of facts" that is reasonable under the circumstances. Culosi v. Bullock, 596 F.3d 195, 201 (4th Cir. 2010) (quoting Milstead v. Kibler, 243 F.3d 157, 165 (4th Cir. 2001)).

There was a sufficient evidentiary basis for the challenged instruction based on the differing accounts from eyewitnesses regarding whether Porter held a gun in his hand when Lusk shot him. The jury was entitled to make credibility determinations and to resolve this conflicting evidence in their assessment

15

whether Lusk violated Porter's constitutional right to be free from excessive force.

Permitting the jury to consider whether Lusk was mistaken regarding this perceived threat, in the context of the § 1983 claim, does not conflict with the district court's decision that the evidence failed to support the separate claim for simple negligence. The two theories of recovery were distinct and required proof of different elements. We therefore conclude that the district court did not err in giving the challenged jury instruction, and did not abuse its discretion in denying the plaintiffs' post-trial motion for relief on this basis.

## III.

In sum, we hold that the district court did not err in entering judgment as a matter of law for the defendants with respect to the simple negligence claim, because the plaintiffs failed to establish an evidentiary basis for such a claim. We also hold that the district court did not err in instructing the jury on the § 1983 claim, and that the challenged jury instruction was properly given based on the evidence presented at trial. Thus, the district court did not abuse its discretion in denying the plaintiffs' motion for a new trial. Accordingly, we affirm the district court's judgment.

AFFIRMED

16